KIMBELL-DIAMOND MILLING CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 10982.    Promulgated January 6, 1948.

*R. B. Cannon, Esq.*, for the petitioner.
*John W. Alexander, Esq.*, for the respondent.

10

OPINION.

ARUNDELL, *Judge*: The primary question for our decision is whether the respondent erred in determining that the involuntary conversion of petitioner's property did not occur within the provisions of section 112 (f) of the Internal Revenue Code.[1]

The facts are not in dispute. Petitioner owned and operated a milling plant at Wolfe City, Texas. In August 1942 this plant was partially destroyed by fire. Insurance in the sum of $118,200.16 was received in settlement of the destroyed assets on November 14, 1942, and this sum was promptly deposited in a special account in the Fort Worth National Bank, which account was created for the purpose of receiving this money. On December 26, 1942, this money, together with additional funds of petitioner, was used to acquire 100 per cent of the stock of the Whaley Milling Co. Whaley was engaged in a business similar to petitioner's, and its assets were of substantially the same general nature as the assets of petitioner which had been destroyed. It would seem on these facts that petitioner clearly brings itself within the language of the statute, and that the profit incident to the involuntary conversion would not be presently taxable.

Respondent argues, however, that petitioner can not be said to have acquired control of Whaley subsequent to the destruction of its plant at Wolfe City, as it had that control prior thereto. This argument is based on the fact that the stock of petitioner was owned by the Kimbell Milling Co. (which in turn was 100 per cent owned by Kay Kimbell), Kay Kimbell, and the latter's sister, Mattie Kimbell Carter, and the Kimbell Milling Co. in turn owned 100 per cent of the stock of the Whaley Co. It is then reasoned that petitioner, through its stockholders, directly or indirectly controlled Whaley from some time in June 1942 and prior to the time petitioner's property was destroyed.

The fallacy of this argument becomes apparent when we realize that "control" within the meaning of section 112 means ownership by

---

[1] (f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

the taxpayer,[2] and it was not until December 26, 1942, that petitioner secured the ownership of the Whaley stock. Nothing short of this constitutes statutory "control"; and we may not substitute control of a practical nature, family relationship, or any other type of control than ownership. Moreover, this record does not support the assumption of respondent that the Kimbell Milling Co. was the owner of all the Whaley stock as early as June 1942. It seems more likely that this ownership was not secured by the Kimbell Milling Co. before December 1942.

On these facts we think the petitioner has met the objection which was posed in the notice of deficiency and which was the basis of the error assigned in the petition. There was no ownership or control by petitioner of the stock or assets of Whaley prior to the purchase of the latter's shares on December 26, 1942.

Respondent in his amended answer affirmatively alleges that he erred in determining petitioner's basis for depreciation and its cost of goods sold and presents the view that what petitioner really acquired was not stock in Whaley, but the assets of Whaley. In support of his view, he points to the fact that the minutes of the petitioner authorizing the purchase of Whaley stock provided for the prompt liquidation of that company and the taking over by petitioner of the Whaley assets, which is in fact exactly what was done. If the transaction is to be so viewed, then the basis for the assets thus taken over must be the adjusted basis of petitioner's destroyed property (sec. 113 (a) (9)),[3] plus the added capital used in the purchase of those assets. Regulations 111, sec. 29.113 (a) (9)–1. In support of this position, respondent relies on *Commissioner* v. *Ashland Oil & Refining Co.*, 99 Fed. (2d) 588, which case, in effect, treats the purchase of stock and the subsequent liquidation of the company as but two steps in a single transaction. If, however, the purchase of the shares be regarded as one transaction and the liquidation of the Whaley Co. be regarded as a separate transaction, section 112 (b)

---

[2] SEC. 112. (h) DEFINITION OF CONTROL.—As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(9) INVOLUNTARY CONVERSION.—If the property was acquired, after February 28, 1913, as the result of a compulsory or involuntary conversion described in section 112 (f), the basis shall be the same as in the case of the property so converted, decreased in the amount of any money received by the taxpayer which was not expended in accordance with the provisions of law (applicable to the year in which such conversion was made) determining the taxable status of the gain or loss upon such conversion; and increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion under the law applicable to the year in which such conversion was made.

(6) of the code [4] would apply and the basis of the property acquired from Whaley would be the latter's adjusted basis. Sec. 113 (a) (15). [5] As this is apparently much higher than the basis under section 113(a) (9), the matter of how the transaction is to be viewed becomes of importance.

Upon the legal premise that the basis of the Whaley assets in petitioner's hands is the lower basis determined pursuant to sections 112 (f) and 113 (a) (9), respondent claims that petitioner realized additional income from sales and that depreciation originally allowed was excessive. If the position respondent now urges had been the basis for his original determination, with the burden of proof on the taxpayer to establish the contrary, we would have a different situation. But the burden rests on the party affirmatively raising these questions—here, the Commissioner [6]—to establish not only the legal premise, but also all the material facts necessary to support his claims for the additional items of income. Even if he be right as to the proposition of law advanced, he has offered no factual basis to form a predicate for his claims that petitioner realized additional income. He has merely contented himself with making a mathematical computation by arbitrarily assigning to the several different assets taken over from Whaley a definite figure which he contends is the basis that should be used in determining such matters as depreciation, profit on the sale of inventory taken over, etc. Thus, by revaluing the inventory, respondent changes the cost of goods sold, without offering any proof that any part of the inventory taken over from Whaley was in fact sold by petitioner within the taxable year. He changes the amount of depreciation without offering any evidence as to what in fact would be the correct amount. He apparently uses, as a basis in revaluing the assets of Whaley, information he has taken from a revenue agent's report which is not even in evidence.

As a starting point for his computation, respondent uses certain figures which he says represent the adjusted bases of the several Whaley assets. Although certain allegations with respect thereto were pleaded in the petition, they were denied in the answer; and affirmative allegations in this connection in the amended answer were denied in the reply. Neither party offered any evidence bearing thereon. However, even if we should treat as established the adjusted bases of the several Whaley assets, the respondent's position would not be helped. Any reallocated basis would have to be bottomed on

[4] (6) PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. * * *

[5] (15) PROPERTY RECEIVED BY A CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of section 112 (b) (6), then the basis shall be the same as it would be in the hands of the transferor. * * *

[6] Rule 32, Rules of Practice before The Tax Court.

market value, and there is no testimony or other proof in the record on this point. *Glenn H. Curtiss*, 21 B. T. A. 629; affd., 57 Fed. (2d) 847; *Sallie Strickland Tricou*, 25 B. T. A. 713; *Hazeltine Corporation*, 32 B. T. A. 4; affirmed without discussion of this point, 89 Fed. (2d) 513.

In this state of the record we prefer not to decide, in this proceeding, the legal question as to whether the purchase of shares in Whaley by the petitioner constitutes as a matter of law the acquisition of Whaley assets. We leave that question open for determination in any appropriate proceeding involving a later year, where a record presenting an adequate factual basis may be made. We shall let the present case rest on the issue raised in the petition and answer, founded on the determination as made by the Commissioner in the first instance.

It is our conclusion that petitioner has met the requirements of section 112 (f), and that the gain from the receipt of the insurance is not taxable to petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HARRON, *J.*, dissents.