KIMBELL-DIAMOND MILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20509. Promulgated January 27, 1950.

*R. B. Cannon, Esq.*, for the petitioner.
*John W. Alexander, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: This proceeding involves deficiencies in income, declared value excess profits, and excess profits taxes for the fiscal years ended May 31, 1945 and 1946, in the following amounts:

| Year ended— | Income tax | Declared value excess profits tax | Excess profits tax |
|---|---|---|---|
| May 31, 1945 | $5,679.25 | | $7,055.55 |
| May 31, 1946 | | $2,352.23 | 26,128.02 |

The deficiencies are primarily due to respondent's reduction of petitioner's basis in assets acquired by it in December, 1942, through the liquidation of another corporation known as Whaley Mill & Elevator Co. (sometimes hereinafter referred to as Whaley). By reason of this reduction respondent has adjusted petitioner's allowable depreciation and its excess profits tax credit based on equity invested capital. By appropriate assignments of error petitioner contests these adjustments. Other adjustments which respondent made have been conceded.

This leaves for our consideration the determination of petitioner's basis in the assets acquired from Whaley.

The facts have been stipulated and are adopted as our findings of fact. They may be summarized as follows:

Petitioner is a Texas corporation, engaged primarily in the business of milling, processing, and selling grain products, and has its principal office in Fort Worth, Texas. Petitioner maintained its books and records and filed its corporation tax returns on an accrual basis for fiscal years ended May 31 of each year. For the years ended May 31, 1945 and 1946, its returns were filed with the collector of internal revenue for the second collection district of Texas.

On or about August 13, 1942, petitioner sustained a fire casualty at its Wolfe City, Texas, plant which resulted in the destruction of its mill property at that location. The assets so destroyed, and the adjusted basis thereof, were as follows:

|  | Cost | Depreciation allowed or allowable | Adjusted basis |
|---|---|---|---|
| Mill building | $6, 106. 96 | $2, 967. 50 | $3, 139. 46 |
| Elevator building | 7, 007. 77 | 6, 024. 15 | 983. 62 |
| Machinery | 24, 785. 70 | 16, 840. 85 | 7, 944. 85 |
| Warehouse | 13, 984. 79 | 9, 076. 52 | 4, 908. 27 |
| Steel tank | 4, 886. 48 | 2, 940. 78 | 1, 945. 70 |
| Total | 56, 771. 70 | 37, 849. 80 | 18, 921. 90 |

This property was covered by insurance, and on or about November 14, 1942, petitioner collected insurance in the amount of $124,551.10 ($118,200.16 as a reimbursement for the loss sustained by the fire and $6,350.94 as a premium refund). On December 26, 1942, petitioner's directors approved the transaction set forth in the minutes below:

THAT, WHEREAS, on or about August 1, 1942, the flour mill and milling plant of Kimbell Diamond Milling Company located at Wolfe City, Texas was destroyed by fire; and

WHEREAS, Kimbell-Diamond Milling Company collected from the insurance companies carrying the insurance on the said destroyed properties the sum of $125,000.00 as indemnification for the loss sustained, which said insurance pro-

ceeds were by the proper officers of this corporation promptly deposited in a special account in the Fort Worth National Bank of Fort Worth, Texas, where they have since been kept intact in order to have the same available for replacing, as nearly as might be, the destroyed properties; and

WHEREAS, it has at all times been the intention and desire of Kimbell-Diamond Milling Company to replace its burned mill either by constructing a new mill or by purchasing facilities of substantially similar kind and use; and

WHEREAS, due to existing building restrictions and other causes, it has been found impractical and impossible to replace the destroyed facilities by new construction, but it has come to the attention of the officers of this corporation that the stock of Whaley Mill & Elevator Company, a Texas corporation, which, among its other assets, owns physical properties substantially comparable to the destroyed Wolfe City Milling plant, can be purchased;

NOW, THEREFORE, BE IT RESOLVED:

1. That the proper officers of Kimbell-Diamond Milling Company be, and they are hereby, authorized, empowered and directed to purchase the entire authorized, issued and outstanding capital stock of Whaley Mill & Elevator Company, a Texas corporation, consisting of 4,000 shares of the face or par value of $100.00 per share, for a sum not in excess of $210,000.00; that payment for the said stock of Whaley Mill & Elevator Company be made, to the extent possible, from the insurance proceeds deposited in a special account in the Fort Worth National Bank, and that the balance of the agreed consideration for the stock of Whaley Mill & Elevator Company be paid out of the general funds of Kimbell-Diamond Milling Company.

2. That as soon as practicable after the purchase of the Whaley Mill & Elevator Company stock hereby authorized has been consummated, all necessary steps be taken to completely liquidate the said corporation by transferring its entire assets, particularly its mill and milling equipment, to Kimbell-Diamond Milling Company in cancellation and redemption of the entire issued and outstanding capital stock of Whaley Mill & Elevator Company, and that the charter of said corporation be forthwith surrendered and cancelled.

On December 26, 1942, petitioner acquired 100 per cent of the stock of Whaley Mill & Elevator Co. of Gainesville, Texas, paying therefor $210,000 in cash which payment, to the extent of $118,200.16, was made with the insurance proceeds received by petitioner as a result of the fire on or about August 13, 1942.

On December 29, 1942, the stockholders of Whaley assented to the dissolution and distribution of assets thereof. On the same date an "Agreement and Program of Complete Liquidation" was entered into between petitioner and Whaley, which provided, inter alia:

THAT, WHEREAS, KIMBELL-DIAMOND owns the entire authorized issued and outstanding capital stock of WHALEY, consisting of 4000 shares of a par value of $100.00 per share, which said stock was acquired by KIMBELL-DIAMOND primarily for the purpose of enabling it to secure possession and ownership of the flour mill and milling plant owned by WHALEY, the parties herewith agree that the said mill and milling plant shall forthwith be conveyed to KIMBELL-DIAMOND by WHALEY under the following program for the complete liquidation of WHALEY viz:

(1) KIMBELL-DIAMOND shall cause the 4000 shares of the capital stock of WHALEY owned by it to be surrendered to WHALEY for cancellation and retire-

ment, whereupon WHALEY shall forthwith convey, transfer and assign unto KIMBELL-DIAMOND all property of every kind and character owned or claimed by it, particularly its flour mill and milling plant, located at Gainesville, Texas, and all machinery and equipment appurtenant thereto, or used in connection therewith, in full and complete liquidation of all of the outstanding stock of WHALEY. The aforesaid distribution in complete liquidation shall be fully consummated by not later than midnight, December 31, 1942.

(2) When the entire assets of every kind and character, owned by WHALEY, have been transferred to KIMBELL-DIAMOND in full and complete liquidation of the capital stock of WHALEY, owned by KIMBELL-DIAMOND, WHALEY shall forthwith make application to the Secretary of State of the State of Texas for its dissolution as a corporation and surrender its corporate charter.

On December 31, 1942, the Secretary of State of the State of Texas certified that the Whaley Mill & Elevator Co. was dissolved as of that date.

The assets so distributed to petitioner, the cost of same to Whaley, the depreciation sustained thereon while owned by Whaley, and Whaley's adjusted basis therefor, as of December, 1942, were as follows:

| | Cost to Whaley | Reserve for depreciation | Whaley's adjusted basis |
|---|---|---|---|
| Depreciable assets: | | | |
| Concrete elevator building | $24,666.59 | $16,073.33 | $8,593.26 |
| Concrete mill building | 68,871.95 | 30,033.22 | 38,838.73 |
| Concrete tanks | 25,753.30 | 9,741.05 | 16,012.25 |
| Steel tanks | 24,038.19 | 9,192.16 | 14,846.03 |
| Brick office building | 5,589.08 | 1,352.04 | 4,237.04 |
| Machinery, mill | 153,271.79 | 123,917.75 | 29,354.04 |
| Machinery, elevator | 17,682.61 | 12,428.12 | 5,254.49 |
| Corn sheller | 8,106.68 | 5,831.69 | 2,274.99 |
| Country elevators | 28,290.30 | 22,169.50 | 6,120.80 |
| Garage | 79.13 | 15.82 | 63.31 |
| Warehouse | 5,254.17 | 157.63 | 5,096.54 |
| Laboratory equipment | 2,061.98 | 412.40 | 1,649.58 |
| Furniture and fixtures | 1,088.47 | 167.91 | 920.56 |
| Autos and trucks | 11,207.92 | 4,947.92 | 6,260.00 |
| Total | 375,962.16 | 236,440.54 | 139,521.62 |
| Land | | | 24,014.50 |
| Other assets: | | | |
| Cash | | 211.13 | |
| Receivables | | 44,672.61 | |
| Inventory | | 118,981.85 | |
| State warrants | | 992.88 | |
| Deposits and prepaid | | 342.00 | 165,200.47 |
| Total assets | | | 328,736.59 |
| Liabilities: | | | |
| Accounts payable | | 4,136.75 | |
| Accrued taxes | | 9,884.15 | 14,020.90 |
| Net book value (to Whaley) of assets transferred to Kimbell-Diamond Milling Co. on liquidation of Whaley stock | | | 314,715.69 |

In filing its tax returns for the fiscal year ended May 31, 1943, petitioner did not include in net taxable income the amount of the insurance proceeds, less the adjusted basis of the destroyed assets, a net amount of $99,278.26. Respondent in his deficiency notice in

Docket No. 10982 (involving the fiscal year ended May 31, 1943) determined that petitioner realized a gain of $99,278.26. In its petition in Docket No. 10982, petitioner alleged that it came within the provisions of section 112 (f) of the Internal Revenue Code, pertaining to involuntary conversions, and realized no gain on the conversion of its assets. Prior to the hearing in Docket No. 10982, respondent filed an amended answer in which he affirmatively alleged that he had "erroneously determined that the petitioner took the assets of the Whaley Mill and Elevator Company at Whaley's adjusted basis of $328,736.59." Respondent alleged that, if petitioner had not complied with section 112 (f), its basis in these assets would be $224,020.90, and if petitioner had complied with section 112 (f) its basis would be $110,721.94. Respondent's allegations were based on the theory that what petitioner really acquired was not stock in Whaley, but rather the assets of Whaley. All allegations of fact in the amendment to answer were denied in the reply filed by petitioner.

In our decision in Docket No. 10982 we held that, since the affirmative allegations were made in the amendment to answer, the burden of proof was on respondent to sustain those allegations and that the burden thereon had not been met. We decided only the question of whether petitioner had complied with section 112 (f), pertaining to involuntary conversions. On this question petitioner prevailed. As to the allegations contained in respondent's amendment to answer, we said (10 T. C. 7, 14) :

In this state of the record we prefer not to decide, in this proceeding, the legal question as to whether the purchase of shares in Whaley by the petitioner constitutes as a matter of law the acquisition of Whaley assets. We leave that question open for determination in any appropriate proceeding involving a later year, where a record presenting an adequate factual basis may be made. We shall let the present case rest on the issue raised in the petition and answer, founded on the determination as made by the Commissioner in the first instance.

There is no dispute that the petitioner's adjusted basis in its depreciable assets which were destroyed by fire was $18,921.90; nor that the depreciable assets which it received from Whaley had an adjusted basis in the hands of Whaley of $139,521.62. Petitioner, in the years herein involved, proceeded under the theory that it was entitled to Whaley's basis. Respondent takes the position that petitioner's cost is its basis in the assets acquired from Whaley. Respondent likewise asserts that for the purpose of computing excess profits credit we must use the actual cost to petitioner of the Whaley assets. The petitioner does not controvert the allocation of cost made by respondent to the various assets acquired from Whaley, both depreciable and nondepreciable property. As to the depreciable assets purchased to replace those involuntarily converted, respondent contends that peti-

tioner's basis is limited by section 113 (a) (9) of the Internal Revenue Code.[1]

Petitioner takes two positions: The first is that the question of basis was decided in the prior proceeding, Docket No. 10982, *Kimbell-Diamond Milling Co.*, 10 T. C. 7, and that consequently such decision is *res judicata* as to this proceeding; the second is that the transaction by which it acquired the assets of Whaley falls within the provisions of section 112 (b) (6) of the Internal Revenue Code[2] and petitioner's basis for the assets so taken over is governed by section 113 (a) (15) of the code.[3]

We must first consider petitioner's contention that our decision in Docket No. 10982 estops respondent from contending that the basis of petitioner's assets acquired from Whaley is other than the basis in the hands of Whaley. Petitioner argues that collateral estoppel applies to these proceedings because the question of petitioner's basis in these same assets was in issue in the prior proceeding and that, because respondent failed in sustaining his burden of proof, the issue was, therefore, decided in favor of petitioner.

The principle of collateral estoppel was most recently discussed by the Supreme Court in *Sunnen* v. *Commissioner*, 333 U. S. 591, wherein it was said that "the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented *and determined* in the first suit." (Emphasis supplied.) Examining our opinion in the first suit, it is clear that we did not determine the matter now before us, as we expressly stated that we

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(9) INVOLUNTARY CONVERSION.—If the property was acquired, after February 28, 1913, as the result of a compulsory or involuntary conversion described in section 112 (f), the basis shall be the same as in the case of the property so converted, decreased in the amount of any money received by the taxpayer which was not expended in accordance with the provisions of law (applicable to the year in which such conversion was made) determining the taxable status of the gain or loss upon such conversion, and increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion under the law applicable to the year in which such conversion was made.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(6) PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. \* \* \*

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(15) PROPERTY RECEIVED BY A CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of section 112 (b) (6), then the basis shall be the same as it would be in the hands of the transferor. The basis of property with respect to which election has been made in pursuance of the last sentence of section 113 (a) (15) of the Revenue Act of 1936, as amended, shall in the hands of the corporation making such election, be the basis prescribed in the Revenue Act of 1934, as amended.

were not deciding this issue; therefore, collateral estoppel is inapplicable.

Having decided the issue of *res judicata* against petitioner, we must now determine the question of petitioner's basis in Whaley's assets on the merits. Petitioner argues that the acquisition of Whaley's assets and the subsequent liquidation of Whaley brings petitioner within the provisions of section 112 (b) (6) and, therefore, by reason of section 113 (a) (15), petitioner's basis in these assets is the same as the basis in Whaley's hands. In so contending, petitioner asks that we treat the acquisition of Whaley's stock ·and the subsequent liquidation of Whaley as separate transactions. It is well settled that the incidence of taxation depends upon the substance of a transaction. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331. It is inescapable from petitioner's minutes set out above and from the "Agreement and Program of Complete Liquidation" entered into between petitioner and Whaley, that the only intention petitioner ever had was to acquire Whaley's assets.

We think that this proceeding is governed by the principles of *Commissioner* v. *Ashland Oil & Refining Co.*, 99 Fed. (2d) 588, certiorari denied, 306 U. S. 661. In that case the stock was retained for almost a year before liquidation. Ruling on the question of whether the stock or the assets of the corporation were purchased, the court stated:

The question remains, however, whether if the entire transaction, whatever its form, was essentially in intent, purpose and result, a purchase by Swiss of property, its several steps may be treated separately and each be given an effect for tax purposes as though each constituted a distinct transaction. * * * And without regard to whether the result is imposition or relief from taxation, the courts have recognized that where the essential nature of a transaction is the acquisition of property, it will be viewed as a whole, and closely related steps will not be separated either at the instance of the taxpayer or the taxing authority. *Prairie Oil & Gas Co.* v. *Motter*, 10 Cir., 66 F. 2d 309; *Tulsa Tribune Co.* v. *Commissioner*, 10 Cir., 58 F. 2d 937, 940; *Ahles Realty Corp.* v. *Commissioner*, 2 Cir., 71 F. 2d 150; *Helvering* v. *Security Savings Bank*, 4 Cir., 72 F. 2d 874. * * *

See also *Koppers Coal Co.*, 6 T. C. 1209 and cases there cited.

We hold that the purchase of Whaley's stock and its subsequent liquidation must be considered as one transaction, namely, the purchase of Whaley's assets which was petitioner's sole intention. This was not a reorganization within section 112 (b) (6), and petitioner's basis in these assets, both depreciable and nondepreciable, is, therefore, its cost, or $110,721.74 ($18,921.90, the basis of petitioner's assets destroyed by fire, plus $91,799.84, the amount expended over the insurance proceeds). Since petitioner does not controvert respondent's ·allocation of cost to the individual assets acquired from Whaley, both depreciable and nondepreciable, respondent's allocation is sustained.

The determination of the issue of the basis to be used in comput-

ing depreciation also determines the issue as to equity invested capital. Petitioner says in its brief: "The invested capital issue involved in this proceeding will be controlled by the decision of this Court as to petitioner's basis for the assets acquired by it upon the complete liquidation of Whaley Mill and Elevator Company." Having decided the depreciation issue in respondent's favor, the issue as to petitioner's equity invested capital is likewise decided in respondent's favor.

The correctness of respondent's other adjustments having been conceded by petitioner,

*Decision will be entered for the respondent.*

Reviewed by the Court.

