MASSILLON-CLEVELAND-AKRON SIGN COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22161, 22162.    Promulgated July 31, 1950.

L. *Darrell Ake, Esq.*, I. B. *Hart, Esq.*, and *John E. O. Feller, Esq.*, for the petitioner.

*Lawrence R. Bloomenthal, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge: Issue 1.* The question under this issue is whether respondent was correct in determining that a part of the involuntary conversion of petitioner's property did not occur within the provisions of section 112 (f) of the Internal Revenue Code.[1]  Under section 112 (f), even though the proceeds of fire insurance exceed the adjusted basis of the property destroyed, if the proceeds are expended in the acquisition of other property similar or related to the property destroyed, the recognition of any gain will be limited to such portion of the proceeds as is not so expended.

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

     *        *        *        *        *        *        *

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund. no gain shall be recognized, but loss shall be recognized.  If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

The basic facts are not in dispute. Petitioner owned and operated buildings, machinery, and equipment which were insured against destruction by fire in one lump-sum payment policy. Part of the buildings, machinery, and equipment was destroyed by fire in 1943. After negotiations with the insurance company, petitioner's loss was calculated to be $99,764.42, allocated on the basis of $60,711 because of the destruction of the buildings and $39,053.42 because of the destruction of the machinery and equipment. Payment of the total loss of $99,-764.42 was made to petitioner by the insurance company in one check. Petitioner applied for and received from the Commissioner permission to segregate the $99,764.42 in one fund, to be used for the replacement of the assets destroyed. The fund was exhausted in 1943 by the expenditure of $20,208.40 for the partial replacement of the machinery and equipment which had been destroyed, and the expenditure of $79,556.02 for the partial replacement of the buildings which had been destroyed.

The substance of respondent's contention is that, since the total of $99,764.42 received by petitioner because of the destruction of its buildings, machinery, and equipment was arrived at by estimating separately the value of the buildings and the value of the machinery and equipment, in effect, two replacement funds were set up—one to replace the buildings destroyed and the other to replace the machinery and equipment destroyed. If respondent is correct in his contention the excess of the amount received by petitioner because of the destruction of the machinery and equipment over the amount expended by it in the replacement of these assets was not "expended in the acquisition of other property similar or related in service or use to the property [involuntarily] converted," within the meaning of section 112 (f), and the gain upon the involuntary conversion of the machinery and equipment is taxable to that extent as capital gain under section 117 (j).

We do not believe, however, that respondent's contention is correct. Section 112 (f) is a relief provision, which takes cognizance of the inequity of taxing a gain resulting from the involuntary conversion of property where the proceeds are used to replace the property, and should be liberally construed to effectuate its purpose. *Washington Railway & Electric Co.*, 40 B. T. A. 1249; *Davis Regulator Co.*, 36 B. T. A. 437; *Washington Market Co.*, 25 B. T. A. 576. We agree with petitioner that there was only one conversion of property, even though the manufacturing plant was made up of various individual assets. Petitioner insured the assets which comprised its manufacturing plant against fire in one contract of insurance. One premium was paid, which afforded protection to all the property. When fire destroyed petitioner's buildings and manufacturing equipment, insurance proceeds were paid by the insurer under one insurance con-

tract which gave joint, not separate, coverage to all the assets which comprised the manufacturing plant. Necessarily, the amount of this indemnification was arrived at by computing the loss suffered by the destruction of the individual assets, but one lump-sum payment of $99,764.42 was made by the insurer covering the total damage to petitioner's manufacturing plant.

The proceeds from the fire insurance policy were placed by petitioner in one replacement fund entitled "The Massillon-Cleveland-Akron Sign Company, Building and Equipment Replacement Fund." Formal application to establish this fund in order to restore the property destroyed, in conformity with section 112 (f), was made to respondent by petitioner, and respondent granted his approval of the segregation of the insurance proceeds in one fund to restore the manufacturing plant. No requirement was ever made that part of the proceeds be earmarked to replace the buildings and part be designated to replace the machinery and equipment. Nor does respondent make any argument that each individual machine or piece of equipment destroyed must be replaced by a similar machine or piece of equipment in order for the benefits contained in section 112 (f) to apply.

If petitioner had used the insurance proceeds in question in the acquisition of control of a corporation owning buildings, machinery, and equipment similar to those which had been destroyed, section 112 (f) would apply regardless of whether or not the values of the assets owned by the newly purchased corporation were exactly in proportion to the values of the properties being replaced. Cf. *Kimbell-Diamond Milling Co.*, 10 T. C. 7; see, also, *Paul Haberland*, 25 B. T. A. 1370. The result would be the same even if the purchased corporation was immediately dissolved, in which case the entire transaction would be viewed as a purchase of assets rather than stock. Cf. *Kimbell-Diamond Milling Co.*, 14 T. C. 74.

In this proceeding, the petitioner made diligent efforts to restore its manufacturing capacity which had been destroyed by fire. As building materials and manufacturing equipment became available, petitioner replaced the component parts of its manufacturing plant by expenditures from the one replacement fund established for that purpose with the approval of respondent. In our view of the facts, petitioner expended the insurance proceeds in question in the acquisition of other property similar or related in service or use to the property destroyed.

It is held that no part of the gain arising from the involuntary conversion of petitioner's buildings, machinery, and equipment is recognizable in the year 1943.

*Issue 2.* The question under the second issue is whether insurance proceeds received by petitioner for the loss of the use and occupancy of its manufacturing plant are excludible as capital gains from peti-

tioner's excess profits net income under section 711 (a) (2) (D), or whether the proceeds are taxable as ordinary income and therefore includible in petitioner's excess profits net income.

Petitioner contends that the recovery was received as the result of an involuntary conversion of property destroyed by fire, and that any gain therefrom is taxable as capital gain under section 117 (j). However, it is well settled that proceeds received under a use and occupancy insurance contract *as compensation for the loss of net profits* resulting from the partial or total suspension of a business because of a fire are taxable as ordinary income. *Oppenheim's Inc.* v. *Kavanagh*, 90 Fed. Supp. 107; *Miller* v. *Hocking Glass Co.*, 80 Fed. (2d) 436, reversing 5 Fed. Supp. 355, certiorari denied, 298 U. S. 659; *International Boiler Works Co.*, 3 B. T. A. 283; Regulations 111, section 29.112 (f)–1; cf. *Williams Furniture Corporation*, 45 B. T. A. 928.

Reference to the contract between petitioner and the Hartford Fire Insurance Company clearly shows that the insurance proceeds in question were received as compensation for the loss of net profits. They were not received as indemnification for property destroyed. The recovery was measured by the estimated loss in net income, to which was added continuing expense. Under the insurance contract, the insurer agreed to be liable for "the actual loss sustained," to wit:

I. Net profit which is thereby prevented from being earned and such charges and other expenses * * * as must necessarily continue during a total or partial suspension of business, to the extent only that such charges and expenses would have been earned had no fire occurred.

\* \* \* \* · \* \* \*

The amount of net profit and/or charges and expenses covered hereunder shall be determined * * * by giving due consideration to the experience of the business before the fire and the probable experience thereafter.

As was said by the Court of Appeals in *Miller* v. *Hocking Glass Co.*, *supra:*

The insurers agreed to be liable for the actual loss sustained "consisting of net profits" measured by the profits of the preceding year. The purpose expressly stated was to insure anticipated earnings which might be interrupted by the destruction of the plant, earnings to arise out of "the business which is thereby prevented." So regarded, the sum received was taxable income within the broad provisions of section 213 (a) of the Revenue Act of 1924. [Now section 22 (a), I. R. C.]

Since the net profits themselves would have been taxable as ordinary income under section 22 (a), the insurance proceeds in lieu thereof are equally taxable as ordinary income. The proceeds, therefore, are not excludible as capital gains from petitioner's excess profits net income under section 711 (a) (2) (D).

Respondent's determination on this issue is sustained.

*Decisions will be entered under Rule 50.*