EMMA CRAMER, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 39447, 39448, 39449, 39450, 39451, 39452, 39453, 39454, 39455. Promulgated June 29, 1953.

*Clement J. Clarke, Jr., Esq.,* and *Frederick H. Spotts, Esq.,* for the petitioners.

*Francis X. Gallagher, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith : Everett L. Cramer Trust, Myra C. Shivers, Trustee ; Jeanne L. Cramer Trust, Russell E. Cramer, Jr., Trustee ; Jessie N. Cramer ; Russell E. Cramer ; Lottie E. Spencer ; Myra E. Shivers ; Stanley S. Cramer ; Russell E. Cramer, Jr.

OPINION.

OPPER, *Judge:* We are unable to distinguish the present facts from *Rodman Wanamaker Trust,* 11 T. C. 365, affd. (C. A. 3) 178 F. 2d 10. That section 115 (g), Internal Revenue Code, was later amended to cover some but not all transactions in which the stock of related corporations is sold to another corporation by its stockholders [1] could not in any event affect the present situation. The amendment was expressly made applicable only to years ending subsequent to August 31, 1950. If respondent's argument were valid that section 115 (a) defining a dividend [2] is alone sufficient to make this transaction taxable, section 115 (g) would have been unnecessary in the first place, the amendment in the 1950 Act is redundant, and the *Wanamaker* case erroneously decided.

It is only because such arrangements do not precisely conform to the definition of dividends, but are "essentially equivalent" thereto that section 115 (g) comes into play. As we said in *Shelby H. Curlee, Trustee,* 28 B. T. A. 773, affd. (C. A. 8) 76 F. 2d 472, certiorari denied 296 U. S. 599 : "If this were sound, that provision of the statute would be surplusage, as such a dividend would be taxable under other provisions. Cf. *United States* v. *Katz,* 271 U. S. 354. The purpose of this section is to tax distributions which effect the cash distribution of surplus *otherwise* than in the form of a legal dividend * * *."

Nor is there validity to the suggestion that this was property acquired in such a way as to be equivalent to a dividend under section 112 (c) (2). That section requires for its application that "a distribution [be] made in pursuance of a plan of reorganization * * * within the provisions of paragraph (1) of this subsection * * *"; and paragraph (1) in turn applies only where "an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5)." The only one of these subsections relied upon by respondent is 112 (b) (3) covering the exchange of "stock for stock on reorganization"; and that section is stated to be applicable solely on the ground that petitioners in effect already owned all the stock in Radio and, hence, the result was similar to an exchange. Such reasoning would make it impossible for a stockholder ever to sell for cash property to a corporation in which he was interested. We think the construction *too* strained to be given serious consideration.

---

[1] See Dean, "The New Section 115 (g) Regulations," 11 N. Y. U. Institute on Federal Taxation 587, 611.

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * *

Disregarding the technical provisions and treating only the substance of the arrangement, we see no analogy adequate to constitute this transaction ordinary income. If not considered as a transfer by petitioners to Radio of stock of entirely separate corporations, and assuming that the purpose was to place in Radio's ownership the property represented by the shares,[3] the reality of the situation can be validly described as that of a sale of the underlying property for cash. In either case the prices paid by Radio were at least equal to those which would have been present in an arm's length transaction. Even the cash received by the stockholders did not hence represent a diminution of corporate surplus since Radio's assets were increased by property at least as valuable as the cash with which it parted. See *Palmer* v. *Commissioner*, 302 U. S. 63, 69. Even if we assume, contrary to the facts, that the other three corporations had first been liquidated, the underlying property itself distributed in liquidation to the stockholders and thereupon sold to Radio for the equivalent amount of cash, the only tax due would be measured by the capital gain of the individual stockholders on the liquidation, section 115 (c), Internal Revenue Code, a consequence identical to that to which the stockholders are now concededly subject.

Although not stated in so many words, respondent's position can accurately be described only as tantamount to disregarding the separate entities of the corporations owning the assets and assuming that they and the property owned by them were in reality already owned by Radio, so that the payments of cash by Radio were gratuitous. But the three corporations had for some time operated as separate business units; their taxes had been computed on that assumption; the basis of the property doubtless carried and taxed on that theory; and no valid reason is suggested why we should now treat them differently. *National Carbide Corp.* v. *Commissioner*, 336 U. S. 422. Cf. *Gregory* v. *Helvering*, 293 U. S. 465.

We are unable to perceive any valid ground for sustaining the contested deficiencies.

*Decisions will be entered under Rule 50.*

---

[3] *Commissioner* v. *Ashland Oil & Refining Co.*, (C. A. 3) 99 F. 2d 588, certiorari denied 306 U. S. 661; *Koppers Coal Co.*, 6 T. C. 1209; *Kimbell-Diamond Milling Co.*, 14 T. C. 74, affd. (C. A. 5) 187 F. 2d 718, certiorari denied 342 U. S. 827.