Conte Equipment Corporation v. Commissioner.
Conte Equipment Corp. v. Commissioner
Docket No. 65143.
United States Tax Court
T.C. Memo 1958-171; 1958 Tax Ct. Memo LEXIS 54; 17 T.C.M. (CCH) 855; T.C.M. (RIA) 58171; September 18, 1958
Robert H. Sabel, Esq., Farmers Bank Building, Pittsburgh, Pa., for the petitioner. Gerald Backer, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the petitioner's income tax for the years and in the amounts as follows: Fiscal year ended
January 31
Deficiency
1953
$ 6,520.16
1954
21,049.89
1955
6,100.92
The sole issue presented for our determination is the correctness of the respondent's action in determining that the basis of property disposed of by petitioner *55 during 1953 is $227,551.98 pursuant to the provisions of sections 112(b)(6) and 113(a)(15) of the Internal Revenue Code of 1939. Additional issues presented by the pleadings have been settled by stipulation. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, Conte Equipment Corporation, sometimes hereinafter referred to as Conte Equipment, is a corporation organized under the laws of the Commonwealth of Pennsylvania on January 30, 1947. Petitioner filed its Federal income tax returns for the fiscal years ended January 31, 1953, 1954, and 1955 with the director at Pittsburgh, Pennsylvania. Petitioner's returns were prepared on an accrual basis. At all times here material all of the issued and outstanding stock of the petitioner consisted of 2,250 shares of common stock which were held by the Conte brothers as follows: Number of
Name
Shares
John C. T. Conte
450
Thomas Conte
450
Valentine Conte
450
Paul Conte
450
Peter J. Conte
450 The foregoing stockholders were also the directors of Conte Equipment. The principal business of Conte Equipment was the rental of contractors' equipment. *56 John C. T. Conte was the president of petitioner and had the responsibility for its financial direction and planning. On December 1, 1952, the shareholders were indebted to Conte Equipment in the indicated amounts as follows: Name
Amount
John C. T. Conte
$44,293.20
Thomas Conte
37,321.82
Valentine Conte
22,567.17
Paul Conte
6,033.11
Peter J. Conte
17,403.11
Conte-Eastwood, Inc., sometimes hereinafter referred to as Eastwood, was organized under the laws of the Commonwealth of Pennsylvania on January 3, 1933. The issued and outstanding stock of Eastwood consisted of 27 shares of common stock which were held by the Conte Brothers as follows: Number of
Name
Shares
John C. T. Conte
5.4
Thomas Conte
5.4
Valentine Conte
5.4
Paul Conte
5.4
Peter J. Conte
5.4
Conte Investment Corporation, sometimes hereinafter referred to as Investment, was organized under the laws of the Commonwealth of Pennsylvania on July 13, 1948. The issued and outstanding stock of Investment consisted of 525 shares of common stock which were held by the Conte brothers as follows: Number of
Name
Shares
John C. T. Conte
105
Thomas Conte
105
Valentine Conte
105
Paul Conte
105
Peter J. Conte
105
*57 On December 1, 1952, at a meeting of the board of directors of Conte Equipment, it was resolved that petitioner would purchase from its stockholders all of their stock in Eastwood and Investment. The consideration for the acquisition by petitioner of the stock of Eastwood and Investment was the crediting of the accounts of the individual stockholders in an amount equal to the value of the stock transferred by each stockholder. The minutes of the meeting of the board of directors of Conte Equipment are in part as follows: "The President, John C. T. Conte stated that the corporation has heretofore advanced to the above named Directors who are the owners of all of the capital stock of the corporation, certain sums of money from time to time. "He further stated that the Internal Revenue Agent of the United States of America who is examining the tax returns of the corporation has made objections to the portions of said advanced sums which are in excess of the salaries due and payable to the above named Directors, and he is taking the position that such advances should be deemed distribution of profits of the corporation, particularly in view of the fact that no efforts have been made *58 by the said Directors, the recipients of such advances, to liquidate the same. He further statedthat said named recipients of such advances have offered to assign, transfer and set over unto Conte Equipment Corporation, all of the capital stock owned by them in the Conte Investment Corporation, a Pennsylvania corporation and in Conte-Eastwood, Inc., a Pennsylvania corporation, if Conte Equipment Corporation would credit the fair value of such stock on account of the advances made to them and hereinabove mentioned. "After a detailed discussion of the matter, upon motion duly seconded and unanimously carried, it was: "RESOLVED: That Conte Equipment Corporation accept the offer of the above named recipients of advances, and that upon the delivery to Conte Equipment Corporation of the certificates of stock duly assigned to Conte Equipment Corporation, that the accounts of the above named recipients of advances be credited in the following amounts: "John C. T. Conte
$10,599.26
Thomas Conte
10,599.26
Valentine Conte
10,599.26
Paul Conte
10,599.26
Peter J. Conte
10,599.26"
On December 15, 1952, all of the stock of Investment was sold to Conte Equipment pursuant *59 to the resolution contained in the minutes of the meeting of the board of directors of petitioner on December 1, 1952. On January 8, 1953, all of the stock of Eastwood was sold to Conte Equipment pursuant to the resolution contained in the minutes of the meeting of the board of directors of petitioner on December 1, 1952. The gain realized by stockholders of Conte Investment from the sale of their stock was reported by them on their income tax returns for 1952 as long-term capital gain, and the gain realized by them from the sale of their Conte-Eastwood stock was reported on their returns for 1953 as longterm capital gain. During February 1953, a real estate salesman having heard that the Conte brothers were interested in selling certain property then owned by Eastwood and Investment contacted petitioner's president. The Conte brothers at that time agreed among themselves to offer the property for sale. During March 1953, the Contes advised the real estate salesman that they were interested in selling the aforementioned property. During April and May 1953, the Contes, through their representatives, negotiated with Graham Development Corporation and Morewood Corporation for the *60 sale of the property. On May 1, 1953, petitioner and Eastwood and Investment executed a Plan of Merger which called for the surrender and cancellation of all of the stock of Eastwood and Investment at the time of the proposed merger. Sometime prior to June 15, 1953, petitioner executed an Agreement of Sale with the Graham Development Corporation and the Morewood Corporation pursuant to which the property owned by Eastwood and Investment was sold to each of the aforementioned purchasers in undivided one-half interests. The Agreement of Sale called for the delivery of deeds to the purchasers of the property by June 15, 1953. On July 29, 1953, Conte Equipment, together with Eastwood and Investment, executed Articles of Merger pursuant to which petitioner was the surviving corporation. The Plan of Merger was approved by the Secretary of the Commonwealth of Pennsylvania on August 6, 1953. Neither petitioner nor Eastwood nor Investment recognized any gain or loss in their income tax returns for 1953 as a result of the corporate merger. The final settlement on the sale of property by Conte Equipment and the delivery of deeds to the vendees took place on August 4, 1953. The consideration *61 received by petitioner from the sale of the real estate acquired from Eastwood and Investment was $320,000. The real property acquired by the petitioner through its merger with Eastwood and Investment, and subsequently sold by petitioner, consisted of brick and concrete block buildings with appurtenant vacant land located at the corner of Thomas Street and Brushton Avenue in Pittsburgh, Pennsylvania. This property was mortgaged to the Peoples First National Bank, Jersey Farm Products, and New England Mutual Life Insurance Company for debts in a total amount of $232,732.19 as of August 4, 1953. The property was occupied by tenants of Eastwood and Investment who had leases for periods extending to 1959, 1961, and 1964. The aggregate adjusted cost basis of the real estate of Eastwood and Investment just prior to the corporate merger with petitioner was $227,551.98. The consideration paid by Conte Equipment for the stock of Investment was $29,446.69, and the consideration paid for the stock of Eastwood was $23,549.60. The adjusted cost basis utilized by petitioner in reporting the sale of the real estate on August 4, 1953, on its Federal income tax return for the fiscal year ended *62 January 31, 1954, was $301,067.45. The gain computed by Conte Equipment in the amount of $19,220.58 which it contends resulted from the sale of the property in question was reported by it as long-term capital gain on its return for the fiscal year ended January 31, 1954. The petitioner did not have as its primary purpose in purchasing the stock of Eastwood and Investment the acquisition of the assets of those corporations. Opinion The respondent has determined that petitioner's basis for computing gain resulting from the disposition of the property here involved is $227,551.98, representing the basis thereof in the hands of Eastwood and Investment, pursuant to the provisions of sections 112(b)(6) and 113(a)(15) of the 1939 Code. [1] The respondent has taken the position that petitioner acquired the assets of Eastwood and Investment through the liquidation of the corporate transferors in a transaction in which the gain is not recognized under section 112(b)(6) of the 1939 Code and therefore in petitioner's hands the assets retained the same basis as they had in the hands of the transferor. *63 The petitioner contends that the proper basis to be assigned to the assets involved is $301,067.45, purportedly representing the cost of the stock of Eastwood and Investment attributable to their real estate holdings. In support of its position, the petitioner maintains that the purchase of all of the issued and outstanding stock of Eastwood and Investment and the subsequent merger of those corporations into petitioner constitute a single, integrated transaction, the underlying purpose of which was to acquire the assets owned by them, under the principles enunciated in such decisions as Commissioner v. Ashland Oil & R. Co., 99 Fed. (2d) 588, certiorari denied 306 U.S. 661; Kimbell-Diamond Milling Co., 14 T.C. 74, affd. 187 Fed. (2d) 718; Koppers Coal Co., 6 T.C. 1209; Montana-Dakota Utilities Co., 25 T.C. 408. In those cases, involving questions similar if not identical to the issue here presented, it was held that where a corporation, in order to acquire the assets owned by another corporation, is compelled to first purchase stock and then liquidate the corporation so as to acquire the desired property, *64 the separate steps required to accomplish the basic purpose will not be regarded independently but will be treated as one transaction, viz., the purchase of assets, and not a distribution in complete liquidation of one corporation by another within the meaning of section 112(b)(6) of the 1939 Code. In such situations, the basis of the assets in the hands of the acquiring corporation is the cost of the stock. Koppers Coal Co. supra. If, however, the purpose motivating a purchase of stock and distribution of assets is an objective other than the acquisition of the assets, the foregoing decisions are inapplicable and the transaction is held to constitute a distribution in complete liquidation under section 112(b)(6) of the Code. John Simmons Co., 25 T.C. 635; Trianon Hotel Co., 30 T.C. 156 (April 30, 1958). The consecutive steps involved in the instant transaction which petitioner contends constituted in substance a purchase of assets are as follows: (1) an offer by the stockholders of Eastwood and Investment to sell all of their stock in those corporations to the petitioner in consideration of the discharge of their indebtedness to petitioner, *65 to the extent of the value of the stock, (2) the sale of the stock of Eastwood and Investment to petitioner pursuant to the resolution adopted by the directors of petitioner on December 1, 1952, (3) the merger of Eastwood and Investment with petitioner, leaving petitioner as the surviving corporation, and (4) the resulting acquisition by petitioner of the assets held by Eastwood and Investment. If it is to sustain its contention, it is incumbent upon petitioner to establish that its basic purpose in acquiring first the stock and then the assets of Eastwood and Investment was actually the acquisition of the assets. Kimbell-Diamond Milling Co., supra; John Simmons Co., supra; Trianon Hotel Co., supra. The minutes of the meeting of the board of directors of petitioner held December 1, 1952, disclosed but one reason for the acquisition by it of the stock of Eastwood and Investment. A revenue agent, upon examination of petitioner's income tax returns, had proposed to treat the advances made by petitioner to its stockholders as constructive dividends unless some effort was made to liquidate those advances. Accordingly, it was resolved that petitioner's *66 stockholders would sell their stock in Eastwood and Investment to the petitioner in consideration for the crediting by petitioner of the value of the stock to their advance accounts. As a result of this transaction the stockholders retained their control over Eastwood and Investment through their ownership of petitioner's stock. Petitioner's president, John Conte, was shown by the record to be the individual who had the responsibility for the financial direction and planning of Conte Equipment. He testified that he recommended to the other directors of Conte Equipment that the petitioner purchase the stock of Eastwood and Investment in order to acquire the assets thereof so as to increase the financial stability of petitioner and to utilize the acquired property as collateral for loans. The petitioner therefore maintains that it was for those reasons that the decision was made by its directors to purchase the stock of Eastwood and Investment and take over their assets. The minutes of the meeting of petitioner's board of directors on December 1, 1952, however, did not mention a proposed corporate merger and in no way suggest that the acquisition by Conte Equipment of the stock of *67 Eastwood and Investment was for the purpose of acquiring property. Further, since all of the property here involved was leased in its intirety to tenants for periods extending through 1959, 1961, and 1964, it would have been impossible at the time of acquisition in 1953 for petitioner to physically utilize the property in its equipment rental business. Moreover, with respect to the contention that the property was to be used as collateral for loans, it appears quite unlikely that property so heavily mortgaged (mortgage encumbrances in the amount of $232,732.19 amounted to approximately 73 per cent of the final sale price of $320,000) would be useful as security for additional loans. The chronology of events culminating in the instant merger indicates that the merger was contemplated subsequent to the purchase of the stock of Eastwood and Investment and subsequent to a decision by petitioner's directors to sell the assets of those corporations. On December 1, 1952, the board of directors of Conte Equipment decided to purchase all of the stock of Eastwood and Investment. The stock of Investment was purchased by petitioner on December 15, 1952, and the stock of Eastwood was purchased *68 on January 8, 1953. During February 1953, a real estate agent contacted petitioner's president, and the directors of petitioner decided to offer the real property owned by Eastwood and Investment for sale. During April and May 1953, petitioner's directors negotiated for the sale of the real estate, which constituted the principal assets of Eastwood and Investment. On May 1, 1953, the petitioner, together with Eastwood and Investment, executed a Plan of Merger. Sometime prior to June 15, 1953, an undated Sales Agreement was executed by petitioner, calling for delivery of deeds to the purchaser of the property owned by Eastwood and Investment by June 15, 1953. Articles of Merger were executed by the officers of petitioner and Eastwood and Investment on July 29, 1953, and the Plan of Merger was approved by the Secretary of the Commonwealth of Pennsylvania on August 6, 1953. The final settlement and delivery of deeds to the property sold by Conte Equipment took place on August 4, 1953. The fact that the directors of Conte Equipment decided to dispose of assets owned by Investment and Eastwood within one to two months after purchasing the stock of those corporations does not support the *69 testimony of John Conte to the effect that petitioner desired to acquire the property of Eastwood and Investment solely for use as collateral for additional financing. Further, it appears from the foregoing succession of events that the decision by the Conte brothers to effect a corporate merger was not made until after they had agreed to sell the assets owned by Eastwood and Investment. The tax advantages of such a course are apparent, for if there had been no merger, the gain realized would have been immediately recognized and taxed, first to Eastwood and Investment and then to the stockholder (petitioner) as a liquidating dividend. Sections 22(a), 117, and 115(c), 1939 Code. The three corporations here involved were at all times owned and controlled, directly or indirectly, by the Conte Brothers. Consequently, Conte Equipment was not compelled to effect the asset acquisition by first acquiring the stock of Eastwood and Investment and then liquidating those corporations. An outright purchase of specific assets by the petitioner could have been accomplished had the Conte brothers so desired. See Trianon Hotel Co., supra.
After examining the events and transactions *70 here involved and giving careful consideration to the minutes of the meeting of petitioner's board of directors held on December 1, 1952, the testimony of petitioner's president, John Conte, the opportunity for individual income tax savings by the directors, the timing by the Conte brothers of the various decisions and transactions, the mortgage and lease encumbrances attached to the assets acquired by petitioner, the alternative method which was open to petitioner of acquiring the assets by direct purchase, and the ultimate disposition of those assets within a short time after their acquisition, we are of the opinion that petitioner did not have as its primary purpose in purchasing the stock of Eastwood and Investment the acquisition of the assets of those corporations. Consequently, we are convinced from the record herein that the purchase by Conte Equipment of the stock of Eastwood and Investment, and their subsequent liquidation, constituted separate and unrelated transactions. Trianon Hotel Co., supra; John Simmons Co., supra.
Accordingly, we hold that the acquisition by petitioner of the assets of Eastwood and Investment constituted the receipt by *71 a corporation of property distributed in complete liquidation of another corporation under section 112(b)(6) of the 1939 Code, and the proper basis of those assets to be utilized by petitioner is the basis thereof in the hands of the transferors. Section 113(a)(15) of the 1939 Code. Decision will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(b) Exchanges Solely in Kind. - * * *
(6) Property received by corporation on complete liquidation of another. - No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if - (A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and * * *
(C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; * * * SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
(15) Property received by a corporation on complete liquidation of another. - If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of section 112(b)(6), then the basis shall be the same as it would be in the hands of the transferor. The basis of property with respect to which election has been made in pursuance of the last sentence of section 113(a)(15)↩ of the Revenue Act of 1936, as amended, shall, in the hands of the corporation making such election, be the basis prescribed in the Revenue Act of 1934, as amended.