Sinnott, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover $11,324.17 income and excess-profits tax for the calendar year 1918. The amount claimed is part of an additional assessment made against the La Salle Portland Cement Company, an Illinois corporation, and paid by plaintiff on September 2, 1927.
On November 30, 1920, plaintiff purchased the assets of the La Salle Portland Cement Company, and assumed its obligations. The said La Salle Portland Cement Company (hereafter referred to as the company) was, in 1918, engaged in the manufacture and sale of Portland cement. A large quantity of the cement sold was shipped to customers, packed in cotton bags, which were suitable for repacking and reuse. The company sold its cement under a standard form of contract, the material provisions of which are set forth in Finding XII, and provide that the bags in which the cement is packed “ are the property of the cement company,” and for a period of 90 days are leased to the customer at a charge of definite amounts. The pur *686 chaser agrees to return the bags within 90 days to the - company and the company agrees to refund to a customer the full amount of the bag charge for each bag returned in good condition. The customer agrees to pay a penalty to the company for each bag sold or disposed of to any person other than the company.
For all shipments made between January 1, 1918, and September 16, 1918, the charge for the bag, and the amount of refund which the company agreed to pay on the bag’s return was 10 cents. For all shipments made between September 16, 1918, and December 31, 1918, the amount was 25 cents. The bags were clearly marked so that the bags shipped out at 10 cents could be distinguished from those shipped at 25 cents.
During 1918 the bags were carried in the company’s inventories at 12.45 cents each. In order to record the receipt of the charge for the bag, the withdrawal of the bag from inventory, and the obligation to refund on the return of the bag, the company used the method of accounting which gives rise to the matter here in controversy. At the time of shipment the company charged its customer with the amount of the charge agreed on in the contract for the bags. At the same time it credited its inventory account with the value of the bag. If the amount of the bag deposit was greater than the value of the bag, the excess was credited to an account known as “Return-bag liability.” If the deposit was less than the value, the difference was charged to this account. When the bag was returned the entry was reversed. The “ Return-bag liability ” accordingly rose and fell from day to day, depending upon the flow of bags in and out, and was affected by the increase of the deposit made for shipments after September 16th, when the amount specified for the bags was changed from 10 to 25 cents.
On January 1, 1918, the “Return-bag liability” of the company was $12,494.69. On December 31, 1918, it was $54,253.98. The company during the period in question kept its books on an accrual basis, and made its return of income for 1918 on that basis. It did not include the *687 increase in its “ Return-bag liability” occurring during 1918 as income for that year.
The Commissioner of Internal Revenue, in auditing the 1918 returns, added to the company’s net income the sum of $41,959.29, representing the increase in the “ Return-bag liability ” during 1918. This action of the commissioner is questioned in the present case.
During the year 1918 the company shipped out 8,122,156 bags and redeemed 2,984,737, or 95.6%. For the period from April, 1913, to December 31,1918, the company shipped out 19,199,956 bags and redeemed 17,014,485, or 89.9%.
A similar practice in regard to cement bags is customary in the industry. The plaintiff, over a period of twenty-two years, redeemed 89.62% of the bags shipped out by it. From Finding XVI it appears from the investigation of the Portland Cement Association that in the district in which the company was located for the three years preceding 1918, approximately 90% of the two hundred thirty million bags shipped out annually by members of the association were returned by the customers.
The question before us is.whether the Commissioner of Internal Revenue was correct in considering the company’s. “ Return-bag liability ” of $41,959.29 as income, accruing to-the company in 1918.
' The plaintiff contends that the commissioner erred in. considering the entire amount of the increase in the “ Return-bag liability ” as income for the year 1918. We agree with the plaintiff’s contention.
The company kept its books on an accrual basis, in accordance with section 212 (b) of the revenue act of 1918, 40 Stat. 1064, as follows:
“(b) The net income shall be computed * * * in accordance with the method of accounting regularly employed, in keeping the books of such taxpayer; * * * or if the method employed does not clearly reflect the income, the-computation shall be made upon such basis and in such manner as in the opinion of the commissioner does clearly reflect the income * *
It seems clear that the company’s method of bookkeeping was calculated clearly to reflect its income, and was within *688 the intent of said section 212 (b). On the other hand, it is clear that the commissioner’s method does not reflect but distorts the coinpany’s income. The company’s method of accounting for its bags provides a necessary and proper consideration of its contractual obligation to refund the charges for the bags made at the time of shipment.
This obligation was a legal liability, the amount of which was readily ascertainable, for the company’s experience, and that of others in the industry, was that 90% of bags outstanding at the end of 1918 would be returned in the due course of its business.
In view of the above, it is apparent that to treat more than 10% of plaintiff’s “ Return-bag liability” of $41,959.29 as income, would be a plain distortion of plaintiff’s income for the year 1918, because 90% of the above amount, which sum the experience of the trade shows must be refunded, is “ properly attributable to the process ” of earning income during that period.
The Supreme Court in considering section 13 (d) of the revenue act of 1916, 39 Stat. 771, from which section 212 (b) supra, is derived, said in United States v. Anderson, 269 U. S. 422, 440:
“ It was to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursements basis.”
In United States v. Anderson, supra, the taxpayer at the end of 1916 set up a reserve to meet the munitions tax on that year’s production. The munitions tax was passed in the fall of 1916, but was not payable until the succeeding year. Its amount was only determinable after audit by the commissioner. In the strict legal sense it did not accrue until due. The Supreme Court said:
“The appellee’s true income for the year 1916 could not have been determined without deducting from its gross in *689 come for the year the total cost and expenses attributable to the production of that income during the year. The reserve for munitions taxes set up on its books for 1916 must have been deducted from receivables for munitions sold in that year before the net results of the operations for the year could be ascertained. The taxpayer * * * could not have complied with par. 13 (d) and Treasury Decision 2433 by deducting either accruals of interest or expenses alone without the other, or without deducting other reserves made on its books to meet liabilities such as the munitions tax, incurred in the process of creating income.
“ Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee’s books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued. It should be noted that paragraph 13 (d) makes no use of the words ‘ accrue ’ or ‘ accrual ’ but merely provides for a return upon the basis upon which the taxpayer’s accounts are kept, if it reflects income — which is precisely the return insisted upon by the Government.”
We may say almost in the language quoted above, that plaintiff’s income for the year 1918 could not have been determined without deducting from its gross income for the year the expenses attributable to its “ Return-bag liability.”
The doctrine announced in United States v. Anderson, supra, was followed in American National Co. v. United States, 274 U. S. 99.
The American National Co. made loans secured by mortgages on notes due in five years, with the privilege of anticipation. At the time the loan was made the borrower gave the company another note for its fee. The company sold the loan notes and, as an inducement, contracted with pur *690 chasers thereof to pay a bonus of 1 per cent per annum in addition to the interest shown on the loan notes.
When the company sold a loan note it charged as an expense on its books the aggregate amount of payments called for in the bonus contract and credited the purchaser with a similar amount in an account known as a “ Guarantee fund ” account.
If a loan note was anticipated, the difference between the amount of bonus contract which had been credited to the purchaser and the payments already made was credited to profit and loss in that year.
The Commissioner of Internal Revenue disallowed the claim of the company for the deduction of the total amount of bonus contracts made in 1917, claiming that it should be allowed to deduct only so much thereof as came due during that year.
The court, following United States v. Anderson, supra, held that the “ Guarantee fund ” was a proper deduction in the year the entries were made:
“ The company’s net income for the year could not have been rightly determined without deducting from the gross income represented by the commission notes the obligations which it incurred under the bonus contracts, and would not have been accurately shown by keeping its books or making its return on the basis of actual receipts and disbursements. The method which it adopted clearly reflected the true income. And, just as the aggregate amount of the commission notes was properly included in its gross income for the year — although not due and payable until the expiration of two years — so, under the doctrine of the Anderson case, the total amount of the bonus contracts was deductible as an expense incurred within the year, although it did not ‘ accrue ’ in that year, in the sense of becoming then due and payable.”
In American Code Co. v. Commissioner, 30 Fed. (2d) 222, the taxpayer discharged an employee in 1919. The employee was entitled to certain commissions not settled or determined at that time. The company knew of its obligations and during 1919 set up a reserve on its books of $14,000. The company kept its books and made its income-tax return on *691 the accrual basis. In 1921, after suit by the employee, the amount was determined by verdict at $21,000. The question arose as to the right of the taxpayer to take a deduction in 1919 for this liability. The circuit court of appeals, in sustaining this right, said:
“ While the amount of the appellant’s liability was not ascertained until a future year, we think that the loss was sustained when the contract was broken and must be considered before the income of that year can be determined. When books are kept on an accrual basis estimated reserves for unliquidated’liabilities must necessarily be used.”
Reference is made in Findings Y and VI to the claim herein involved having been decided adversely to plaintiff’s contention by the United States Board of Tax Appeals, 4 B. T. A. 438. That case was tried on the theory of the sale of the bag-to the customer and an' agreement to buy back the bag. The record before the Board of Tax Appeals differs from the present record in that it does not appear that the board had before it the actual contract used in the transaction, and was not advised that the company specifically retained title to the bag, and did not sell it, but leased the bag. Nor was the case considered from the standpoint of section 212 (b), supra. This is shown in the case of La Salle Cement Co. and Alpha Portland Cement Co., 15 B. T. A. 1127, involving the identical refund-bag provision set forth in Finding XII.
The Board of Tax Appeals in said case, referring to the decision in 4 B. T. A. 438, said:
“ The present case is presented upon a different state of facts and a different theory and this prior decision is not, as counsel for the respondent contends, decisive of the question before us. From the facts in that case it appeared that the petitioner there sold its bags with an agreement to repurchase at the sales price when returned. The sales price, although arbitrarily fixed, was substantially the same as cost. The question presented by that state of facts was whether any deduction could be taken by reason of the obligation to repurchase the bags. Here the evidence is that the petitioner did not sell its bags. The form of the transaction was a lease, petitioner retaining title, with provision *692 for liquidated damage in the event that the bags were not returned.”
In the above-cited case from 15 B. T. A., the commissioner treated the “ Bag redemption ” account as he did in the present case as showing income. The Board of Tax Appeals held this to be incorrect, saying:
“ We conclude that the method used by respondent, while it may be correct in principle when properly applied, does not correctly reflect the income of petitioners for the years before us. On the contrary it seriously distorts the true income. * * * Had the present taxpayers in their financial statements considered the charges for bag deposits outstanding May 31, 1920, as income received the preceding year, they ‘ would have given to their stockholders and the public a false idea of their income.’ ”
The board after pointing out that “ experience showed that 10.1% of the sacks sent out would never be returned ” said, referring to the “ Bag redemption ” acount:
“ We are consequently of the opinion that the income of petitioners will be reflected by including as income for each of the taxable periods 10.1% of the amount so credited to this account during the year.”
The decision in 15 B. T. A., while it involves the fiscal years ending May 31, 1920, and November 30, 1920, involves a bag-refund provision exactly identical with the one in the present case.
We therefore conclude that only 10% of the $41,959.29 in plaintiff’s “ Return-bag liability ” account on December 31, 1918, reflects plaintiff’s income for that year, and that plaintiff is entitled to recover the sum of $11,324.17, with interest. It is so ordered.
GREEN, Judge; Moss, Judge; GRAham, Judge; and Booth, Chief Justice, concur.