## LA SALLE CEMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

## ALPHA PORTLAND CEMENT CO. v. SAME.

### Nos. 4570, 4571.

Circuit Court of Appeals, Seventh Circuit.

June 14, 1932.

Louis H. Porter, of New York City, and Don Kenneth Jones, of Chicago, Ill., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen., and D. A. Moncure, C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Eugene Meacham and C. E. Lowery, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

There is involved income tax of La Salle Cement Co. for its fiscal year ending May 31, 1920, and from May 31, 1920, to November 30, 1920, which includes that of Ironton Cement Co. from January 1, 1920, to November 30, 1920, which last-named company the La Salle Co. had acquired.

Respondent Commissioner contests the jurisdiction of this court. The facts bearing on this question are: La Salle Cement Co., an Illinois corporation, made its income tax return for the tax periods to the collector for the Northern district of Illinois. On November 30, 1920, the Alpha Portland Cement Co. with principal office in the state of Pennsylvania, acquired the property and assets and assumed the obligations of the La Salle Co. Upon audit of the La Salle Co.'s returns, the Commissioner, in 1926, proposed an additional assessment, from which "La Salle Cement Co., by Alpha Portland Cement Co." appealed to the Board of Tax Appeals. While this appeal was pending, the Commissioner proposed to assess the alleged deficiencies to the Alpha Co. as transferee, and Alpha Co. appealed to the Board of Tax Appeals, asserting the alleged tax to be the same as that involved in the pending La Salle Co. appeal, and asking for consolidation of the two appeals. Alpha Co. stipulated it would be responsible for any deficiencies that might be assessed against La Salle Co., and the Board consolidated the two appeals and heard them on one record.

The contention for the Commissioner is that the present petitioner in interest is Alpha Co., which did not file its return in this circuit, and that therefore this court has no jurisdiction to review the order of the Board, citing the Revenue Act of 1926, c. 27, 44 Stat. 9. There being no evidence of any return made by Alpha Co. for the tax periods here in question, the further contention is made that it will be presumed that Alpha Co. made return in Pennsylvania, where its principal office is located, and, having made its return there, the Circuit Court of Appeals of that circuit would alone have jurisdiction of the appeal; or, if it made no return at all, the jurisdiction to review

would, under the statute, be in the Court of Appeals of the District of Columbia. The fallacy in this reasoning appears in the fact that Alpha Co. could have made no return for the tax in question because it did not become the transferee of the property until after the tax periods; also that the return was actually made in this circuit by La Salle Co., whose lawful duty it then was so to make it.

The applicable statute is the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1082, requiring return to be made in the district in which is located the principal place of business or principal office of the corporation [section 241 (b)]. The return in question having been made within this circuit, we are of the view that subsequent proceedings respecting that return must be predicated upon that foundation, and that this court has jurisdiction to review the action of the Board of Tax Appeals based upon that return.

■■■ As to the merits, various issues were involved before the Board of Tax Appeals, but it was stipulated "that the parties are in agreement as to all of the issues involved in these appeals except the treatment of the cement sack account," and this review involves only the proper treatment of cement sack transactions.

The sack redemption grew out of taxpayer's dealings with its customers with reference to the cotton sacks wherein it packed and shipped its cement. Taxpayer purchased these sacks in large quantities. It billed the cement to its customers at a price which was inclusive of the sacks. If and when the sacks were returned the customer was allowed and was paid a stipulated price for each bag in good order so returned—15 cents in the earlier part and 25 cents thereafter. The sacks so returned would be again used for shipping cement, most sacks being used eight or ten times. Taxpayer kept sack accounts wherein the sacks were debited or credited as they were sent out and returned.

The original cost of the sacks to taxpayer was considerably less than the cash refund paid upon their return, and the question here is as to the amount of taxable income derived by taxpayer from the sack transactions.

Under date of March 27, 1929, the Board of Tax Appeals promulgated its findings of fact and opinion (15 B. T. A. 1127), which culminated in the conclusion that "the income of petitioners will be reflected by including as income for each of the taxable periods 10.1 per cent. of the amounts so credited to this (sack redemption) account during the year."

This percentage was found to be the result of the experience of the companies covering a five-year period, indicating that the average number of sacks remaining unreturned during each year was 10.1 per cent. of the sacks sent out.

Further proceedings were had before the Board of Tax Appeals which resulted in the promulgation by the Board, on April 30, 1930, of another finding of facts and opinion (19 B. T. A. 806), in which it was pointed out that the first finding and opinion was based upon the erroneous assumption that the cement sales were substantially all made under a so-called standard form contract, set out in the findings; whereas new evidence submitted showed that only in about five per cent. of the sales was that form employed. This standard form specified that the cloth sacks remained the property of the companies, and were leased to the customer for a period not exceeding ninety days, and that the cement purchaser agreed to return them within that time, and that for each sack so returned in good condition the companies would refund the stipulated price (15 cents or 25 cents), and that for sacks bearing the brands of the companies disposed of by the customer to other persons than "Cement Company, the owner," the customer pay as liquidated damages a specified sum (five or ten cents) for each sack so disposed of.

It appeared that it was the custom of the companies to send out periodically letters indicating cement prices inclusive of sacks, and the amount which would be paid to the customer upon return of the sacks in good order, and that in 95 per cent. of the cement business of the companies the agreement of sale was effected by the customer's order given upon the terms proposed.

The Board held that, in view of the newly adduced evidence, the sack transactions should be treated as sales of the sacks to the customers, and that the profit or loss thereon be ascertained as in other sales made within the tax period; and it reversed its previous decision. The Board receded from its first opinion only because it had therein assumed that the entire business was done under these leasing contracts.

It was held by the United States Court of Claims that, where the cement sacks were sent out under a leasing contract, and title was expressly retained by the sender, it was proper to take the average experience of the company over a period of years to compute the percentage of sacks which would not be returned in the tax period, and to compute the

profit upon such unreturned percentage of sacks. Alpha Portland Cement Co. v. United States, 67 Ct. Cl. 680. This is in accordance with the Board's first decision in the instant case, and this we deem a proper conclusion on such a state of facts.

In Dewey Portland Cement Co. v. Crooks, 57 F.(2d) 499, 501 (C. C. A. 8), there was involved the redetermination of taxes growing out of sack transactions quite similar to those of the 95 per cent. here involved. The sales there were under a contract which provided that "The price named includes the sacks in which the cement is to be shipped. Cloth sacks of Dewey Brand delivered hereunder will be repurchased subject to the seller's inspection and count, at twenty-five cents each if returned promptly in serviceable condition. * * * Sacks that have been wet or are worthless will not be repurchased." There was nothing to indicate that the company retained title to the sacks or that they were sold under a leasing contract, and the court said: "It is to be noted that the title to the sacks passed to the purchaser of the cement, and that he was under no obligation to return them. * * * The bags were merchandise bought by the plaintiff, and sold by the plaintiff to its customers, and repurchased by the plaintiff from its customers. If they had not been returned, the plaintiff would have been obliged to purchase other bags in the market."

We consider the reasoning of this opinion to be sound, and it fully supports the Board's last decision herein so far as it relates to the 95 per cent. of the sacks.

As to the five per cent. sales, wherein the companies retained title to the sacks, we believe the principle of the Board's first decision should be applied. These were not sales, and profit to the companies on these transactions might arise only in the cases where the sacks were not returned. We believe it sufficiently accurate for this purpose to adopt the annual percentage rate of unreturned sacks as found from the experience of the companies over an extended period, which, in the Board's last decision, was found to be 10.9 per cent.

There should be further redetermination of this tax by computing upon the leased sacks (five per cent. of the whole) a tax on the basis of 10.9 per cent. of those sacks being returned, under the principle announced in the Board's first decision herein. As to the tax growing out of the remaining 95 per cent. of the sacks, the judgment of the Board here under review should stand so far as proportionally applicable to such 95 per cent.

The cause is remanded to the Board of Tax Appeals for further proceedings in consonance with the foregoing views.