*Decision will be entered under Rule 50.*

NEHI BEVERAGE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20515. Promulgated May 17, 1951.

*Trent G. Anderson, Jr., Esq.*, for the petitioner.
*L. C. Aarons, Esq.*, for the respondent.

1116

**1118**

OPINION.

Rice, *Judge:* Petitioner seeks to apply section 112 (f) of the Internal Revenue Code[1] to the foregoing facts. Briefly, its theory is that there was an involuntary conversion of a portion of its beverage containers during the taxable year 1946, that its board of directors recognized this fact at its meeting on December 31, 1945, and authorized the transfer of $17,271.42 from its deposit liability account to its miscellaneous income account for containers that would never be returned, that this sum of $17,271.42 was used immediately to purchase replacement containers which were used in its business, and that under

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

\*  \*  \*  \*  \*  \*  \*

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

section 112 (f) no taxable income was recognized by this disposition of funds in its deposit liability account.

Respondent contends that there has been no involuntary conversion of petitioner's property, that an involuntary conversion of property occurs as a result of its destruction, a theft, a seizure, requisition, or condemnation, that if there has been a conversion of property into money the latter must be expended in the acquisition of similar property, and that for depreciation purposes any similar property so acquired takes the substituted basis of the converted property which, in this case, was zero. For the purposes of this case, respondent has accepted petitioner's method of determining how many containers would not be returned, the sum of $17,271.42 as the proper amount of funds that should be transferred from petitioner's deposit liability account to its miscellaneous income account, and 1946 as the proper taxable year.

Section 112 of the Code relates to the recognition of gain or loss. In subsection (a) thereof the Congress laid down the general rule, that upon the sale or exchange of property the entire amount of gain or loss, as determined under section 111, shall be recognized. The exceptions to the general rule appear as subsections 112 (f) to (m), inclusive. Subsection 112 (f) is the exception which relates to recognition of gain or loss from involuntary conversions of property. It provides that upon compliance with the conditions therein stated the gain from involuntary conversions shall not be recognized. Recognition of gains from involuntary conversions is postponed for tax purposes until a subsequent sale or disposition of the property which takes the adjusted basis for gain or loss provided by section 113 (a) (9), Internal Revenue Code. In the Code and the Revenue Acts prior thereto Congress has consistently recognized the inequity of taxing a gain resulting from an involuntary conversion of property where the proceeds are used to replace the property.[2] And in applying 112 (f), this Court, and other courts, have uniformly recognized this remedial intent of Congress and have construed the statutory language liberally.[3]

A liberal construction of a relief provision to effectuate the intent of Congress does not mean, however, that a loose construction (which would permit abuse) is justified. *Washington Railway & Electric Co.*, 40 B. T. A. 1249, 1259 (1939). The statutory conditions must be met if the taxpayer is to benefit from the non-recognition of gain provisions. Assuming, for the sake of argument, that some of petitioner's containers were involuntarily converted into money, we are not con-

---

[2] See *Eastern Steamship Lines, Inc.*, 17 B. T. A. 787 (1929), interpreting section 234 (a) (14), Revenue Act of 1921, which was retroactive; and *Massillon-Cleveland-Akron Sign Co.*, 15 T. C. 79 (1950).

[3] *Washington Railway & Electric Co.*, 40 B. T. A. 1249 (1939), and cases cited therein.

vinced that petitioner has complied with that portion of the statute which states that such money must be "forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, * * *, or in the establishment of a replacement fund, * * *."

Respondent's regulations dealing with the reinvestment of the proceeds of involuntary conversions are found in section 29.112 (f)–1, Regulations 111. They provide that it is not sufficient for a taxpayer seeking the benefits of section 112 (f) to show that subsequent to the receipt of the money he purchased other property similar or related in use. The taxpayer must trace the money into the payments for the property so purchased. He must be able to prove that the money was actually reinvested in other property similar or related in use to the property converted. The benefits of 112 (f) cannot be extended to a taxpayer who does not purchase other property similar or related in service or use, notwithstanding the fact that no other such property was available for purchase.

Petitioner is unable to comply with section 112 (f) as interpreted by respondent's regulations. The growth of its deposit liability account was adversely affecting its financial statements and the directors forfeited to income net deposits in excess of a stated amount. There was no provision or direction in the directors' minutes for placing the forfeited deposits in a special account to be used for any specific purpose. The forfeited deposits were not placed in a special fund or earmarked for a specific purpose but were commingled with other funds used for corporate purposes generally. Such treatment made the $17,271.42 available for general business purposes, and even though our findings show that petitioner was purchasing thousands of dollars of containers annually, it cannot be established that this $17,271.42 was "forthwith in good faith * * * expended in the acquisition of other property similar or related in service or use to the property so converted, * * *." The necessity for such compliance in order to secure the benefits of the non-recognition of gain provisions is clearly set forth in *Vim Securities Corp.* v. *Commissioner* (C. A. 2, 1942), 130 F. 2d 106, affirming 43 B. T. A. 759, certiorari denied 317 U. S. 686; *Kennebec Box & Lumber Co.* v. *Commissioner* (C. A. 1, 1948), 168 F. 2d 646, affirming T. C. Memorandum Opinion and cases therein cited. It follows that even if petitioner's containers were involuntarily converted within the meaning of section 112 (f), it would nevertheless be unable to secure the benefits of that section for failure to comply with the other statutory requirements.

Taxpayers using returnable containers in their trade or business have accounted for the sales price thereof or the deposits thereon in

various ways. In cases involving sales and subsequent repurchases of containers, the transactions have been treated in the same manner as the sale of any other merchandise.[4] In cases involving deposits on containers, title to which is retained by the vendor, the deposits can be recorded as liabilities rather than income,[5] but the closing out of a part of the deposit liability account and putting the money to free surplus funds is a financial act which creates income in the year in which it is done.[6] In the *Wichita* case the language of the court is particularly apt in view of the similarity of facts. The court said, at page 7:

> The judge [Federal District Judge] found as a fact that the cases and bottles were not sold but that deposits were made to secure return of them, the time of return being indefinite, and any person being allowed to return them. This view has support in the evidence. The bottles bear distinctive marks, the cases bear the taxpayer's name or initials as owner. They were expected to be returned if not destroyed. The account was labeled "Deposit", as if the money entered was that of others. The tax returns all called the account a liability. The stipulation as above quoted itself calls the money "deposits". If the balance was an aggregate of old deposits, the book entry closing them out and putting the money to free surplus funds was not mere bookkeeping, but a financial act, as though a bank could and did transfer to its surplus old deposit accounts as barred or abandoned. Such a financial act creates income in the year in which it is done. Compare *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 352, 40 S. Ct. 155, 64 L. Ed. 297; *Boston Consol. Gas Co.* v. *Commissioner*, 1 Cir. 128 F. (2d) 473; *Commissioner* v. *Dallas Title & Guar. Co.*, 5 Cir., 119 F. (2d) 211.

At the time petitioner's board of directors forfeited $17,271.42 of the deposits in its deposit liability account, the bottles and cases represented thereby had been fully depreciated. There was, therefore, no undepreciated cost to be recovered from the forfeited deposits, and, upon the authority of the *Wichita* case, we hold that petitioner realized income in the full amount of the forfeited deposits.

Petitioner's alternative contention is that the recognized gain of $17,271.42 should be treated as capital gain under section 117 (j).[7]

---

[4] *LaSalle Cement Co.* v. *Commissioner* (C. A. 7, 1932), 59 F. 2d 361, certiorari denied, 287 U. S. 624 (cement sacks) ; *Beadleston & Woerz, Inc.*, 5 B. T. A. 165 (1926) (bottles and cases).

[5] *Farmers Creamery Co. of Fredericksburg, Va.*, 14 T. C. 879.

[6] *Wichita Coca Cola Bottling Co.* v. *United States* (C. A. 5, 1945), 152 F. 2d 6, certiorari denied, 327 U. S. 806.

[7] (j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (C) * * *.

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the

Petitioner concedes that the containers involved would not be capital assets within the meaning of section 117 (a) (1) since they are both used in the trade or business and are subject to the reserve for depreciation under section 23 (l). But it contends that 117 (j) is a later enactment than 117 (a) (1) and was intended to aid taxpayers generally as stated in *Albright* v. *United States* (C. A. 8, 1949), 173 F. 2d 339. Petitioner also cites and relies on three recent decisions of this Court.[8]

The statute specifically describes the transactions in property to which it applies as involuntary conversions, sales, and exchanges. Property transactions outside the statutory language are unaffected thereby. Petitioner must, therefore, bring its forfeiture of the deposits within one of the three mentioned categories if the recognized gain is to be treated as capital gain rather than as ordinary income.

Petitioner has taken a position with respect to each category. It contends that the determination of its board of directors effected (1) a sale on condition subsequent, or (2) an exchange of petitioner's equity in the bottles for the cash contained in the deposit liability account, or (3) an involuntary conversion in somewise not qualifying for the tax free provisions of section 112 (f).

The theory that the action of petitioner's directors in forfeiting the deposits effected a sale on condition subsequent is conceived by the following process of reasoning. When the beverages were sold the possibility was recognized that the deposits on containers might have to be forfeited because of their destruction. Petitioner thus acquired a right to consider the destruction of the containers as the sale thereof and the amount of the deposit as the selling price. The deposit was retained therefore upon the condition that if the container was later destroyed title to the deposit passed to petitioner. The action of the board of directors in forfeiting the deposit established the occurrence of the condition subsequent and effected the sale.

compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph:

(A) In determining under this paragraph whether gains exceed losses, the gains and losses described therein shall be included only if and to the extent taken into account in computing net income, except that subsections (b) and (d) shall not apply.

(B) Losses upon the destruction in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.

[8] *Massillon-Cleveland-Akron Sign Co.*, 15 T. C. 79 (1950) ; *Guy L. Waggoner*, 15 T. C. 496 (1950) ; *Alamo Broadcasting Co.*, 15 T. C. 534 (1950).

It is stipulated that the containers were not sold by petitioner, but it was also agreed that this stipulation would not preclude the above argument that the legal effect of the non-return of the containers and the forfeiture of the deposit amounted to a sale. Respondent contends that if the fiction of a sale of unreturned containers is to be indulged in then the logical extension of the fictional sale theory is that such containers were "property held by taxpayer primarily for sale to customers in the ordinary course of his trade or business," which would prevent the application of 117 (j). In other words, if unreturned containers are "sold," the gain should receive the same treatment as the gain from the sale of the beverage itself, and not the special treatment provided for certain types of gain in section 117 (j).

We agree with respondent that the gain realized on the unreturned containers did not result from the sale of property. Too many of the necessary elements of a sale [9] are lacking even for a determination of a fictional sale or a sale on a condition subsequent. There was no sales contract, there was no buyer and no seller, there was no meeting of the minds that a sales transaction was being considered, no money was paid to buy property, no price was fixed to purchase property, and, under petitioner's theory that the property was destroyed, there was no property in existence when petitioner by unilateral action took the deposits from its liability account, and made them available for general corporate purposes.

Petitioner's theory that the gain was the outgrowth of an exchange of property rights visualizes its equity in the bottles and containers being exchanged for the customers' rights to the deposits. One difficulty with this theory lies in its conflict with petitioner's basic theory that the bottles and cases were destroyed and therefore could not be returned. The deposit was given originally as a security for the return of the containers and in view of the fact that the cost of the containers exceeded the deposit it was to petitioner's interest economically to get every container returned as many times as possible for refill. But when the container is destroyed the right to a return of the deposit is destroyed too. Whatever property right the customer had in the deposit was shattered with the bottle, and there could be no exchange of property as specified in section 117 (j), for, as there used, the word "exchange" means reciprocal transfers of capital assets.[10] Actually, the accumulated destruction of containers over a period of years had built up a top-heavy liability account unfavorable to petitioner's credit standing. The transfer of the $17,271.42 in the taxable year reduced

[9] *Williamson* v. *Berry*, 49 U. S. (8 How.) 495, 544.
[10] *Helvering* v. *Flaccus Oak Leather Co.*, 313 U. S. 247 (1914).

the liabilities shown on petitioner's financial statement and still left ample funds in the deposit liability account to take care of any abnormal return of containers.

Finally, petitioner contends that the recognized gain grew out of an involuntary conversion within the meaning of section 117 (j) which somehow fails to qualify as an involuntary conversion under section 112 (f). Petitioner's brief points out that Regulations 111, section 29.117–7 state that an involuntary conversion under section 117 (j) is a conversion of property into money or other property as a result of its destruction in whole or in part, theft, etc. Thus, says petitioner, the regulation emphasizes the conversion of the destroyed property into "money or other property," which is the situation here, since petitioner realized its gain primarily upon the action of its board of directors in determining that containers in the amount of $17,271.42 had been destroyed. Petitioner admits that the containers were fully depreciated but contends that since the gain realized from the sale of fully depreciated assets can be capital gain,[11] the gain realized on these containers should also be treated as capital gain.

We cannot agree that the situation here is comparable to that existing in *Providence Coal Mining Co.* There is a specific finding in that case that the assets there involved were sold.[12] No such finding can be made here. Petitioner sold nothing. It made inter-account transfers of a part of the deposits given as security by its customers long after the containers had been fully depreciated. There was certainly nothing involuntary about such transfers.

In view of the foregoing, we hold that even though section 117 (j) was intended as a remedial measure applicable to all taxpayers within its provisions, the facts here do not warrant nor has petitioner established its right to apply 117 (j) to the unilateral action of its directors in freeing funds in a deposit liability account for general corporate purposes. The resulting gain was ordinary income and respondent properly taxed it as such. In so holding we have carefully considered our decisions in *Massillon-Cleveland-Akron Sign Co.*, *Guy L. Waggoner*, and *Alamo Broadcasting Co.*, footnote 8 *supra*. There is no similarity in the facts here to the facts in any of the cited cases, and the tax principle applied there does not apply here. Petitioner's claim for refund of a part of its 1944 taxes based upon the alleged erroneous treatment of this $17,271.42 item was properly denied by respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[11] *Providence Coal Mining Co.* v. *Glenn*, 88 Fed. Supp. 975 (1950).

[12] Whether the assets sold were fully depreciated or not is immaterial.