**FISHING TOOLS, INC., Plaintiff,**
**v.**
**Chester A. USRY, Defendant.**
**Civ. A. No. 10947.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 21, 1964.

peditions' when an oil well becomes jammed during drilling. When tools so leased are not returned to the lessor, the plaintiff, the lessee is required to pay for them at a price equal to their cost plus ten (10) per cent or at a stipulated price. During the years involved herein the plaintiff has carried the tools on its books and records as capital assets and has been allowed to depreciate them."

"Fishing tools" are highly durable and virtually indestructible, but plaintiff's operations and the terrain where the operations occur make the tools susceptible to outright loss or voluntary abandonment by plaintiff's customers, particularly when used on offshore rigs. When the rented tools are not returned, plaintiff's customers are billed for them. Transactions of this type occurred in all of the three years in question.

During 1958, plaintiff made four bulk sales of tools to three purchasers for the purpose of raising working capital and disposing of tools for which there was little rental demand.

Plaintiff contends that these bulk sales of tools were sales of capital assets. It also contends that the income derived from payment for unreturned tools arose from the involuntary conversion of capital assets. Plaintiff asserts that the gains from these transactions are capital gains, entitling it to the preferential treatment authorized by Section 1231 of the Internal Revenue Code. 26 U.S. C.A. § 1231.

The District Director insists that the gains from these transactions must be taxed as ordinary income because they were earned in transactions integral to plaintiff's main business of renting tools. The defendant contends that under the "container cases" [1] and Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955),

Steeg & Shushan, Moise S. Steeg, Jr., New Orleans, La., for plaintiff.

Louis C. LaCour, U. S. Atty., Eastern Dist. of Louisiana, Gene S. Palmisano, Asst. U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., Jerome J. Reso, Jr., Tax Div. Dept. of Justice, Washington, D. C., for defendant.

SOLOMON, District Judge.

Plaintiff, Fishing Tools, Inc., seeks to recover income taxes overpaid in the amount of $1,312.71 in 1956, $7,734.92 in 1957, and $16,335.99 in 1958, plus interest. These amounts represent taxes assessed by the defendant, District Director of Internal Revenue, upon a determination that income received from the payment for nonreturned rental tools and certain bulk sales of tools was ordinary income.

Plaintiff's business is peripheral to the oil industry. The parties have stipulated that:

"The plaintiff is in the business of leasing tools and furnishing expert labor to oil operators for 'fishing ex-

1. Nehi Beverage Co. v. Commissioner, 16 T.C. 1114 (1951); Northwestern States Portland Cement Co. v. Huston (8 Cir. 1942), 126 F.2d 196; Wichita Coca-Cola Bottling Co. v. United States (5 Cir. 1945), 152 F.2d 6; Fort Pitt Brewing Co. v. Commissioner (3 Cir. 1954), 210 F.2d 6, cert. den'd 347 U.S. 989, 74 S.Ct. 851, 98 L.Ed. 1123.

income from either type transaction does not qualify for preferential capital gains treatment.

Plaintiff places its principal reliance on E. I. Du Pont De Nemours & Co. v. United States (Ct. of Cl.1961), 288 F.2d 904. In that case the court held that a taxpayer selling gas in durable and expensive pressurized cylinders was entitled to capital gain treatment for gain from the forfeiture of deposits on unreturned containers. Chief Judge Jones listed the elements necessary to qualify a gain for capital gains treatment under Section 117 of the 1939 Code, the predecessor to Section 1231 of the 1954 Code:

"In order for the plaintiff to come within the provisions of section 117 (j) the burden is upon it to show: (1) that the cylinders were used in the trade or business; (2) were subject to an allowance for depreciation; (3) were held for more than 6 months; (4) were not included in inventory if on hand at the close of the taxable year; (5) were not held by the plaintiff primarily for sale to customers in the ordinary course of its trade or business; and (6) that the disposition of the cylinders was by 'involuntary conversion,' 'sales,' or 'exchanges.' " 288 F.2d at 908.

Here, as in Du Pont, the first four elements listed by Chief Judge Jones are present. The government does not seriously contend that the remaining two elements are absent. However, the District Director insists that under the Corn Products doctrine if gain arises from transactions integral to plaintiff's main business it is taxable as ordinary income, regardless of whether the assets were held primarily for sale or were involuntarily converted.[2]

■ There were only four bulk sales in 1958. They were made to three purchasers. These few sales are insufficient to transform plaintiff's capital assets into property held primarily for sale. Nor do I find that they were integral to plaintiff's main business. These sales constituted liquidations of capital assets to obtain working capital. The gains from these bulk sales arose out of the sales or exchanges of capital assets. They are therefore entitled to capital gains treatment.

Even though the failure to return tools occurred with some frequency, there was no pattern of regularity. Some loss or destruction was foreseeable but no particular loss, not even a certain percentage of loss, could be predicted. Much of the income derived from payments for unreturned tools was used to replace those tools.

■ These tools were highly durable and very expensive. A customer would not be indifferent or careless in returning them as he might a beer bottle or another cheap or fragile container. A customer might abandon his search or attempts to recover the "fishing tools" only when he considered that course less expensive. Plaintiff preferred to have the tools returned. Its employees often helped search for and recover lost tools. Payments which it received for unreturned tools were refunded when the tools were found and returned. Plaintiff's charge of ten (10) per cent over cost is insignificant. This additional charge is hardly sufficient to cover administrative costs. The customers' failure to return the tools or their voluntary or involuntary abandonment in wells did not convert plaintiff's assets into property held primarily for sale nor did it make these transactions integral to plaintiff's main business. In my view, the income derived from payments for tools not returned was income arising out of involuntary conversions of plain-

2. Houston Oil Field Material Co., Inc. v. United States (unreported), Western District of Texas, Austin Division 1956, C.A. 839, involved an identical fact situation on unreturned tools. However, the issue there, as formed by the pleadings and decided by the jury, was limited to whether the plaintiff had held the unreturned rental tools primarily for sale. The jury determined that it did not and held in favor of the taxpayer. That issue has not been raised in this case.

tiff's capital assets and qualified for preferred treatment under Section 1231.

The cases cited by the defendant are clearly distinguishable. The "container cases" relied on the regularity and predictability of loss to hold that income earned through forfeiture of deposits on fragile and inexpensive containers was ordinary income. In the Corn Products case the dealing in corn futures was admittedly done for business purposes. Even if not done for the purpose of hedging, which it closely resembled, it constituted a voluntary activity engaged in by the corporation to assure itself ample raw material in its manufacturing effort.

Plaintiff shall prepare and submit appropriate findings of fact, conclusions of law and a judgment, all in accordance with this opinion.