MADISON SQUARE GARDEN CORPORATION (FORMERLY GRAHAM-PAIGE CORPORATION), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3844–67. Filed July 17, 1972.

*David G. Sacks,* for the petitioner.
*Agatha J. Vorsanger,* for the respondent.

#### OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years and in the amounts as follows:

| Year ended Dec. 31 | Amount |
|---|---|
| 1957 | $84, 300. 00 |
| 1958 | 21, 222. 37 |
| 1960 | 75, 914. 43 |
| 1961 | 126, 526. 93 |

Some of the issues raised by the pleadings have been disposed of by the parties, leaving for our decision:

(1) Whether petitioner acquired 80 percent of the stock of Madison Square Garden Corp. by "purchase" within the meaning of section 334(b)(2), I.R.C. 1954,[1] so as to entitle petitioner to use as the basis of the property acquired from Madison Square Garden Corp. upon its liquidation the adjusted basis of the stock with respect to which the distribution of property was made.

(2) If petitioner is entitled to a basis of the assets based on the adjusted basis of the stock, is this adjusted basis applicable to all assets acquired from Madison Square Garden Corp. or only 80 percent thereof and what amount of reduction should be made for cash or its equivalent.

All of the facts have been stipulated and are found accordingly.

Petitioner, Madison Square Garden Corp., is a corporation organized under the laws of the State of Michigan with its principal place of business at the time of the filing of the petition in this case in New York, N.Y. Petitioner's name was changed from Graham-Paige Corp. to Madison Square Garden Corp. in April 1962.

Petitioner filed consolidated corporate income tax returns with its subsidiaries for the calendar years 1957 and 1958 with the district director of internal revenue, Lower Manhattan, and for the calendar years 1960 and 1961 with the district director of internal revenue, Manhattan, New York, N.Y.

Madison Square Garden Corp. (hereinafter referred to as Garden) was a corporation organized under the laws of the State of New York. Garden was merged into its parent corporation, Graham-Paige Corp., on April 20, 1960.

On February 19, 1959, Garden had one class of stock authorized of which 563,500 shares were outstanding. All of this stock was voting stock.

On February 19, 1959, petitioner purchased 219,350 shares of the capital stock of Garden for a total price of $3,948,300. On the same date, Royal American Corp. (hereinafter referred to as Royal), an 80-percent-owned subsidiary of petitioner organized in March 1958, purchased 123,800 shares of the capital stock of Garden for $2,228,400.

Prior to October 1959 Royal completed the purchase of an additional 6,450 shares of Garden's stock for $116,100. These purchases were made by Royal pursuant to agreements entered into by petitioner and the various sellers.

In October 1959 Garden purchased 73,600 shares of its own capital stock for the sum of $1,472,000. Those shares were retired by Garden.

---

[1] All references are to the Internal Revenue Code of 1954.

On October 9, 1959, Garden and petitioner solicited tenders of additional shares of Garden's capital stock from stockholders. Pursuant to that tender offer, petitioner purchased an additional 65,941 shares of capital stock of Garden from shareholders for a total consideration of $1,318,820.

As permitted by order of the Securities and Exchange Commission dated December 16, 1959 (Investment Company Act Release No. 2949), Garden purchased 130,200 shares of its capital stock from Royal (then 63-percent owned by petitioner) on January 2, 1960. The purchase price was $20 per share, or an aggregate of $2,604,000. The shares were retired by Garden.

On January 3, 1960, petitioner owned a total of 285,291 shares of Garden's capital stock, or 79.3 percent of the 359,700 shares then outstanding. During the month of January 1960 petitioner purchased an additional 3,060 shares of Garden's stock for a total consideration of $61,200.

As a result of the foregoing transactions there were as of February 1, 1960, 359,700 shares of Garden's capital stock issued and outstanding, of which 288,351 shares were owned by petitioner (or approximately 80.16 percent of the total combined voting power of all classes of stock of Garden entitled to vote, there being no other class of stock outstanding).

During the month of March 1960 petitioner purchased an additional 200 shares of the capital stock of Garden for a total consideration of $4,000, thereby giving petitioner ownership of approximately 80.22 percent of the outstanding capital stock of Garden.

Pursuant to the agreement of merger between petitioner and Garden,[2] the holders of the 71,149 shares of Garden's outstanding capital stock which were not owned by petitioner were entitled to receive in exchange therefor 160,085 shares of petitioner's $0.60 cumulative preferred stock. The merger was consummated on April 20, 1960. As of April 20, 1960, the fair market value of Garden's capital stock was $19.375 per share and of petitioner's $0.60 cumulative preferred stock was $8.75 per share.

---

[2] This agreement is not in evidence. The minutes of a meeting of the executive committee of Madison Square Garden Corp. of Feb. 3, 1960, contain the following paragraph:

The Chairman described the terms of a proposed merger of the Corporation with and into Graham-Paige Corporation. He stated that the first step in such merger would be the filing with the Securities and Exchange Commission of an application for an exemption of the merger from the provisions of Section 17(a), of the Investment Company Act of 1940.

On motion, duly seconded, it was unanimously

RESOLVED that the officers be and they hereby are authorized and directed to prepare and file with the Securities and Exchange Commission an application for an order exempting from the provisions of Section 17(a) of the Investment Company Act of 1940 the proposed merger of the Corporation with and into Graham-Paige Corporation.

No distributions were made to petitioner by Garden with respect to its stock during the period January 15, 1960, to April 20, 1960.

Petitioner's adjusted basis as of April 20, 1960, for the 288,551 shares of Garden's capital stock, representing approximately 80.22 percent of Garden's total outstanding shares, was $5,332,320.

The fair market values as of April 20, 1960, of certain of Garden's assets were as follows:

|  | Fair market value | Specific lien | Net fair market value |
| --- | --- | --- | --- |
| Land | $3,725,000 | $1,043,400 | $2,681,600 |
| Building and equipment | 6,985,000 | 1,956,600 | 5,028,400 |
| Hockey franchise | 400,000 |  | 400,000 |
| Basketball franchise | 250,000 |  | 250,000 |
| Hockey players | 750,000 |  | 750,000 |
| Basketball players | 250,000 |  | 250,000 |
| Madison Square Garden Boxing, Inc.—stock | 100,000 |  | 100,000 |
| 34349 Corp.—stock | 57,264 |  | 57,264 |
| Goodwill | 500,000 |  | 500,000 |
|  | 13,017,264 | 3,000,000 | 10,017,264 |

The value as of April 20, 1960, of certain of Garden's other assets was as follows:

| | |
| --- | --- |
| Cash | $1,821,190 |
| U.S. bond | 1,500 |
| Inland Steel | 324,000 |
| Accrued interest | 13 |
| Net accounts receivable | 226,223 |
| Special deposits | 38,441 |
| Inventories | 98,703 |
| Prepaid expenses | 138,233 |
| Deferred charges | 37,653 |
| Advances to subsidiaries | 100,363 |
| Net unamortized loan discount and expense | 111,525 |
| Total | 2,897,844 |

Petitioner listed on its depreciation schedule in its consolidated return for 1960 the book value of Garden's depreciable assets as of April 20, 1960, the date of the merger of Garden into petitioner and its reserves as of that date. A footnote to this schedule was as follows:

(1) During the period from February 1959 through January 14, 1960 Graham-Paige Corporation acquired more than 80 per cent of all classes of stock of Madison Square Garden Corporation. On April 20, 1960 Madison Square Garden Corporation was merged into Graham-Paige Corporation. This merger qualifies as a liquidation under Section 332 and to the extent that Graham-Paige Corporation purchased stock of Madison Square Garden Corporation, it is entitled to determine its basis for a portion of the assets acquired in liquidation under Section 334(b)(2). To the extent that stock was acquired by reason of merger, a

portion of the assets is carried over at its basis in the hands of Madison Square Garden Corporation.

Depreciation was computed on the assets from April 20 through December 31, 1960, and for the year 1961 by using a basis for the assets determined by considering that 80.22 percent of the assets had been acquired by purchase for the adjusted basis of the Garden stock it had purchased reduced by certain amounts petitioner considered to be cash or its equivalent acquired from Garden upon the merger.

Respondent in his notice of deficiency disallowed part of the depreciation deduction claimed by petitioner in each of these years with the following explanation:

It has been determined that the merger of Madison Square Garden Corporation into Graham-Paige Corporation does not fall within the purview of Section 334(b)(2) and that as a consequence the basis of property received from Madison Square Garden Corporation is the same as it was in the hands of the transferor and not the adjusted basis of the stock with respect to which the distribution was made. * * *

By amendment to its petition, petitioner alleged that:

(6) petitioner's total federal income tax basis of assets received by it upon the liquidation of Garden is the sum of (a) petitioner's adjusted basis for the stock of Garden held by it as of April 20, 1960; (b) the fair market value of petitioner's stock issued in exchange for the portion (19.78%) of Garden's assets attributable to stock of Garden which was not held by petitioner on April 20, 1960; (c) the amount of any liens to which Garden's property was subject on April 20, 1960; (d) Garden's total unsecured liabilities assumed by petitioner; and (e) Garden's earnings and profits for the period from January 15 to April 20, 1960.

Section 332 [3] provides for the nonrecognition of gain or loss by a corporation upon the receipt of property in complete liquidation of another corporation. The nonrecognition provisions of section 332 apply where the corporation receiving the property possessed 80 percent of the stock of the other corporation on the date of the adoption of the plan of liquidation.

If a transaction constitutes a distribution in complete liquidation and meets the requirements of section 332, it qualifies for the nonrecognition treatment provided for by that section of the Code even

---

[3] SEC. 332. COMPLETE LIQUIDATIONS OF SUBSIDIARIES.

(a) GENERAL RULE.—No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.

(b) LIQUIDATIONS TO WHICH SECTION APPLIES.—For purposes of subsection (a), a distribution shall be considered to be in complete liquidation only if—

(1) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 percent of the total number of shares of all other classes of stock (except non-voting stock which is limited and preferred as to dividends); and either

though it is a merger under State law. Sec. 1.332–2 (d) and (e), Income Tax Regs. Respondent concedes the applicability of the provisions of section 332 to the merger of Garden into petitioner in this case.[4]

Section 334 [5] contains the rules for determining the basis of property received in distribution in complete liquidation. Section 334(b) (1)

---

[4] Respondent does not argue the applicability of sec. 331 as postulated in Rev. Rul. 70–106, 1970–1 C.B. 70. Respondent held in the revenue ruling that a liquidation failed to qualify under sec. 332 where the minority shareholders' 25-percent interest was redeemed prior to the plan of formal liquidation.

Respondent in his brief explains the basis of his position that the transaction in the instant case was a liquidation under sec. 332 and distinguishes it from his revenue ruling as follows:

"In Rev. Rul. 70–106, C.B. 1970–1, 70 respondent took the position that a liquidation failed to qualify under Section 332 in a situation in which the minority shareholders 25 percent interest was redeemed prior to the adoption of the formal plan of liquidation. Although there is a superficial similarity between the facts of the revenue ruling and those of this case, it is respondent's position that the two situations are distinguishable. In the revenue ruling it was postulated that a plan of liquidation was in fact adopted at the time the agreement to redeem the minority interest was reached. In this case no such fact exists nor would it be appropriate to infer that a plan of liquidation had been adopted at the time the redemption occurred."

[5] SEC. 334. BASIS OF PROPERTY RECEIVED IN LIQUIDATIONS.

(a) GENERAL RULE.—If property is received in a distribution in partial or complete liquidation (other than a distribution to which section 333 applies), and if gain or loss is recognized on receipt of such property, then the basis of the property in the hands of the distributee shall be the fair market value of such property at the time of the distribution.

(b) LIQUIDATION OF SUBSIDIARY.—

(1) IN GENERAL.—If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), then, except as provided in paragraph (2), the basis of the property in the hands of the distributee shall be the same as it would be in the hands of the transferor. If property is received by a corporation in a transfer to which section 332(c) applies, and if paragraph (2) of this subsection does not apply, then the basis of the property in the hands of the transferee shall be the same as it would be in the hands of the transferor.

(2) EXCEPTION.—If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), and if—

(A) the distribution is pursuant to a plan of liquidation adopted—

(i) on or after June 22, 1954, and

(ii) not more than 2 years after the date of the transaction described in subparagraph (B) (or, in the case of a series of transactions, the date of the last such transaction) ; and

(B) stock of the distributing corporation possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote, and at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), was acquired by the distributee by purchase (as defined in paragraph (3)) during a 12-month period beginning with the earlier of—

(i) the date of the first acquisition by purchase of such stock, or

(ii) if any of such stock was acquired in an acquisition which is a purchase within the meaning of the second sentence of paragraph (3), the date on which the distributee is first considered under section 318(a) as owning stock owned by the corporation from which such acquisition was made,

then the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made. For purposes of the preceding sentence, under regulations prescribed by the Secretary or his delegate, proper adjustment in the adjusted basis of any stock shall be made for any distribution made to the distributee with respect to such stock before the adoption of the plan of liquidation, for any money received, for any liabilities assumed or subject to which the property was received, and for other items.

sets forth the general rule that the basis of property received in a complete liquidation to which section 332 applies shall be the same as it would have been in the hands of the transferor corporation. Section 334(b)(2) provides an exception to the general rule where stock of the distributing corporation possessing at least 80 percent of the voting power was acquired by the distributee by "purchase," and the distributing corporation liquidates within 2 years of such purchase. If these conditions are met, the basis of the assets in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made.

Petitioner seeks to avail itself of the provisions of section 334(b)(2) in order to receive a stepped-up basis in the assets distributed to it by Garden in liquidation. Respondent takes the position that petitioner is limited to the substituted basis of the assets in the hands of Garden under the provisions of section 334(b)(1). In support of his position, respondent asserts that petitioner has failed to meet the requirement of section 334(b)(2)(B) in that petitioner did not acquire at least 80 percent of Garden's stock by "purchase."

Section 334(b)(3) defines "purchase" to be any acquisition of stock except that acquisitions described in subparagraphs (A), (B), and (C) of that section are not acquisitions constituting a "purchase" within the meaning of section 334(b)(2)(B).[6] The parties have stipulated that none of the exclusions apply to the acquisition of Garden stock by petitioner. Therefore, all of the shares of Garden stock held by petitioner were acquired by petitioner by "purchase." See *Bijou Park Properties, Inc.*, 47 T.C. 207 (1966).

On February 1, 1960—just prior to the merger of Garden and petitioner—petitioner owned 80.16 percent of the outstanding capital stock of Garden. At the time of the merger, petitioner owned 80.22 percent of the outstanding capital stock of Garden. However, respondent contends that petitioner is not entitled to a basis in the assets acquired from Garden determined under section 334(b)(2) because petitioner did not achieve 80-percent ownership and control of Garden by "purchase." It is respondent's position that the shares of stock of Garden purchased by petitioner were less than the requisite 80 percent and the only reason petitioner owned 80 percent of Garden's stock was that after petitioner and a subsidiary of petitioner had purchased approximately 60 percent of Garden's stock and thereby acquired control of that corporation, Garden redeemed approximately 36 percent of its stock. The stock redeemed by Garden was retired, thereby reducing the

---

[6] The purchase requirement of sec. 334(b)(2)(B) was designed to prevent a taxpayer from acquiring a cost basis in assets distributed in respect of stock acquired in a nontaxable transaction. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 258.

total number of Garden shares outstanding so that the number owned by petitioner was approximately 79 percent. Petitioner thereafter acquired some other shares of Garden stock bringing its total ownership to over 80 percent and then the merger agreement was entered into.

Section 334(b)(2)(B) requires that "stock * * * possessing at least 80 percent" ownership and control of the distributing corporation be "acquired by purchase." Petitioner owned "stock * * * possessing at least 80 percent" ownership and control of Garden which it had "acquired by purchase" if the "stock" to which the statute refers is the stock of the distributing corporation outstanding on the date of the adoption of the plan of liquidation.

Section 332(b)(1) specifically provides that a distribution is to be considered to be in complete liquidation of a corporation if the corporation receiving the property was "on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property," the owner of 80 percent of the stock of the distributing corporation.

The essence of respondent's contention is that the distributee must acquire by purchase 80 percent of the stock outstanding at the time it begins purchasing stock or at the time it first becomes a controlling stockholder. While section 334(b) does not expressly state *when* the number of shares on which the 80 percent acquired by purchase is to be determined, the clear inference from the statute is that it is the number of shares outstanding at the time the plan of liquidation is adopted and at the time the liquidation takes place.

Section 334(b)(2) is applicable only to liquidations within the meaning of section 332(b). It would therefore be incongruous to measure the number of shares comprising the 80 percent acquired by purchase by the shares outstanding at the time the purchase began for the purpose of section 334(b)(2), but to measure the ownership requirement of section 332(a) at the time of the adoption of the plan of liquidation and the receipt of the property.

As we pointed out in *Kansas Sand & Concrete, Inc.*, 56 T.C. 522 (1971), section 334(b)(2) was enacted to provide objective standards for determining bases of assets in transactions of the type involved in *Kimbell-Diamond Milling Co.*, 14 T.C. 74 (1950), affd. 187 F. 2d 718 (C.A. 5, 1951), certiorari denied 342 U.S. 827 (1951). In our view measuring the 80 percent of stock acquired by purchase by the number of shares outstanding when the plan of liquidation is adopted and the property distributed, which is the time the 80-percent ownership is required to exist under section 332, is in accordance with the intent of section 334(b)(2).

Since respondent has conceded that petitioner acquired Garden's as-

sets in a section 332 liquidation, we conclude that section 334(b)(2) is applicable in determining the basis of those assets.

Respondent argues that if we conclude that petitioner's acquisition of 80.22 percent of Garden's stock was by "purchase" so as to invoke the provisions of section 334(b)(2), then petitioner is only entitled to a stepped-up basis with respect to 80.22 percent of the assets distributed in liquidation. Petitioner contends that it is entitled to recompute the basis of 100 percent of Garden's assets since all of Garden's assets were distributed to it in liquidation.

Section 334(b)(2) provides in part that, where the requirements of that subsection have been met, "the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made." The plain, uncontradicted meaning of that provision would require a stepped-up basis on all assets received in respect of stock held at the time of the distribution in liquidation. This interpretation is supported by respondent's regulations which provide:

(1) Property received with reference to stock owned immediately before the liquidation by the parent corporation is the only property to which section 334 (b)(2) is applicable. The section is not applicable to property received with respect to debt or other claims. The basis of the stock used in determining the basis of the assets is the total basis of all stock held by the parent corporation whether or not such stock was acquired by purchase and whether or not such stock is the stock acquired during the period to which reference is made in section 334(b) (2)(A). [Sec. 1.334-1(c)(1), Income Tax Regs.]

Respondent urges that the "property received with reference to stock owned immediately before liquidation" was only 80.22 percent of the assets received from Garden. Respondent appears to be contending that petitioner owned only 80.22 percent of the stock "immediately before the liquidation" and is therefore limited to a step-up in basis to only 80.22 percent of the assets received.

The transaction here was a statutory merger which is treated as a liquidation for tax purposes. As part of the plan of merger, the holders of the 19.78 percent of Garden's stock which petitioner had not purchased were entitled to receive in exchange therefor preferred shares of petitioner. Since petitioner received all of the assets of Garden in distribution, we are in effect asked by petitioner to infer that it owned 100 percent of Garden's stock at the time of the distribution. On the record before us petitioner has failed to establish a basis for such an inference. Petitioner in its allegation refers to the 19.78 percent of Garden's stock that "was not held" by it on April 20, 1960. We have no evidence that petitioner did in fact hold the remaining 19.78 percent of Garden's stock prior to the distribution of Garden's assets. We, therefore, decide this issue for respondent.

Section 334(b) (2) provides that an adjustment shall be made to the adjusted basis of stock with respect to which the distribution is made for "money received." Section 1.334–1(c) (4) (v) (*b*) (*1*), Income Tax Regs., provides in pertinent part:

(v) The adjusted basis of the subsidiary's stock held by the parent with respect to which the distributions in liquidation are made * * *

\*      \*      \*      \*      \*      \*      \*

(*b*) Shall be decreased:

(*1*) By the amount of any cash and its equivalent received, and

Petitioner in allocating the adjusted basis of its stock in Garden apparently takes the position that the following assets are "cash and its equivalent":

| | |
|---|---:|
| Cash | $1,821,190 |
| Inland Steel | 324,000 |
| U.S. bond | 1,500 |
| Accrued interest | 13 |
| Net accounts receivable | 226,223 |
| Special deposits | 38,441 |
| Inventories | 98,703 |
| Prepaid expenses | 138,233 |
| Deferred charges | 37,653 |
| Advances to subsidiaries | 100,363 |
| Net unamortized loan discount and expense | 111,525 |

Petitioner would therefore reduce the adjusted basis of its stock by the stipulated April 20, 1960, value of the assets prior to the allocation, with the result that no increase in value is allocated to these assets and a higher allocation is made to the depreciable assets than would be made were these assets included in the allocation.

Respondent contends that only the cash in the amount of $1,821,190 can properly be considered "cash and its equivalent" within the meaning of the regulations.

While the term "cash and its equivalent" is not defined by the regulations, it has been held not to include marketable securities, inventories, and accounts receivable. *Boise Cascade Corporation* v. *United States*, 288 F. Supp. 770 (D. Idaho 1968), affirmed per curiam 429 F. 2d 426 (C.A. 9, 1970). As to the remaining items petitioner has presented no evidence or argument on brief to the effect that they are to be treated as "cash and its equivalent" for purposes of the basis adjustment to the subsidiary's stock prescribed by section 1.334–1(c) (4) (v) (*b*) (*1*), Income Tax Regs. We therefore conclude that petitioner's adjusted basis in the 80.22 percent of Garden's stock which it held at the time of the merger should only be decreased by 80.22 percent of the amount of the cash distributed, $1,821,190, for purposes of the adjustment required by section 334(b) (2) "for any money received."

*Decision will be entered under Rule 50.*