500 F.2d 611
 74-2 USTC P 9618
 MADISON SQUARE GARDEN CORPORATION (formerly Graham-Paige
Corporation), Petitioner-Appellant/Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant/Appellee.
 Nos. 858, 1099, Dockets 73-2160, 73-2407.
 United States Court of Appeals, Second Circuit.
 Argued May 23, 1974.
Decided July 30, 1974.
 
 David G. Sacks, New York City (Simpson, Thacher & Bartlett, Michael H. Simonson, Margaret Ann Murdich, New York City, of counsel), for petitioner-appellant/appellee.
 Carolyn R. Just, Atty. Tax Div. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Ernest J. Brown, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellant/appellee.
 Before SMITH and TIMBERS, Circuit Judges, and TYLER,* District judge.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 These are cross-appeals from a decision by the Tax Court, 58 T.C. 619 (1972), Irene F. Scott, Judge, holding (1) that the taxpayer, Madison Square Garden Corporation (MSG), was entitled under 26 U.S.C. 334(b)(2) to a stepped-up basis for assets acquired through a merger-liquidation of a controlled corporation, but (2) that it was limited in this step-up to 80.22% Of the assets received since it controlled only that percentage of the acquired corporation's stock at the time of the liquidation. We affirm on the Commissioner's appeal of the first holding, but reverse and remand on the taxpayer's appeal of the second.
 
 
 2
 The facts have been stipulated. In the year prior to the merger-liquidation, MSG acquired approximately 52% Of the stock of the old Madison Square Garden Corporation (Old Garden). However due to the fact that during this acquisition period Old Garden redeemed 36% Of its own stock, MSG's interest rose from the 52% To just over the 80% Required for a stepped-up basis under 334(b)(2). Pursuant to the merger-liquidation agreement, MSG with its 80.22% Interest, received 100% Of Old Garden's assets, while the minority shareholders-- who held the remaining 19.78% Interest-- received therefor an appropriate amount of preferred stock in MSG.
 
 I.
 
 3
 The Commissioner contends that this merger-liquidation failed the 80% Control rule of 332 and the corresponding basis provisions of 334(b)(2) in that MSG did not 'purchase' the required 80% Interest in Old Garden, but rather sat by and watched as the 52% It had acquired blossomed into 80% Due to the redemption of the Old Garden shares. The Commissioner advances this rather mechanical interpretaton of 334(b)(2) without benefit of any direct authority save the word 'purchase' in the Code itself.[1]
 
 
 4
 But as 334(b)(3) makes clear, that term is not to be so narrowly construed:
 
 
 5
 Purchase defined.-- For purposes of (334(b)(2)), the term 'purchase' means any acquisition of stock . . ..
 
 
 6
 To be sure, here there was technically no 'acquisition' of 80% Of the shares outstanding at the start of the acquisition period. But neither was the redemption a fortuitous accident. Rather the reduction in the number of outstanding shares was obviously part of a general plan by which MSG would acquire the assets of a somewhat smaller Old Garden. And as the parties agree, Congress' explicit intent in enacting 334 was to codify the rule of Kimbell-Diamond v. Commissioner of Internal Revenue, 14 T.C. 74 (1950), aff'd 187 F.2d 718 (5th Cir.), cert. denied, 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626 (1951), that such an integrated transaction should be treated as the purchase of assets that in substance it is. See, S.Rep. No. 1622, 83rd Cong., 2d Sess., 3 U.S. Code Cong. & Admin.News 4621, 4679, 4894-4895 (1954); Cabax Mills v. Commissioner of Internal Revenue, 59 T.C. 401, 408-409 (1972).
 
 
 7
 Given this clear intent, we believe the Tax Court was quite correct in holding that 334 is not limited to the case where a corporation acquires the requisite 80% Control solely through purchases, rather than through purchase and redemption. Clearly the underlying goal of purchasing assets and the degree of control immediately prior to the liquidation are the same in either case. To accept the Commissioner's contrary contention that the measurement of control must be made according to the number of shares outstanding at the start of the acquisition period would be to raise an irrational bar in any case where the statutory purpose was in all other respects met, but the acquired corporation, for whatever reason, found it necessary or desirable to retire a portion of its stock.
 
 
 8
 In short, we believe the Tax Court was correct in holding that the measurement of control is to be made on the date the liquidation plan is adopted and the assets distributed. Here the requisite control was present.
 
 II.
 
 9
 Turning then to the question of the proper basis for the assets acquired, we find that the issue was largely overlooked in the stipulation of facts: Thus while the parties have provided us with such helpful information as the useful lives of the athletes owned by the Garden,[2] neither side has introduced the actual liquidation agreement. We must, therefore, infer from other facts the precise nature of the liability MSG assumed vis-a-vis the minority shareholders. That difficulty noted, it seems clear-- and neither the Commissioner nor the Tax Court seriously disputes-- that MSG immediately bought out the minority as an integral part of the entire transaction.
 
 
 10
 Nevertheless, the Tax Court found that the taxpayer had failed to establish that it held a 100% Interest in Old Garden prior to the liquidation and distribution of the assets. In holding that the taxpayer was therefore entitled to a stepped-up basis on only 80.22% Of the assets it received, the court reasoned:
 
 
 11
 The transaction here was a statutory merger which is treated as a liquidation for tax purposes. As part of the plan of merger, the holders of the 19.78 percent of Garden's stock which petitioner (MSG) had not purchased were entitled to receive in exchange therefor preferred shares of petitioner. Since petitioner received all of the assets of Garden in distribution, we are in effect asked by petitioner to infer that it owned 100 percent of Garden's stock at the time of the distribution. On the record before us petitioner has failed to establish a basis for such an inference. Petitioner in its allegation refers to the 19.78 percent of Garden's stock that 'was not held' by it on April 20, 1960. We have no evidence that petitioner did in fact hold the remaining 19.78 percent of Garden's stock prior to the distribution of Garden's assets.
 
 
 12
 58 T.C. 619, 627 (1972).
 
 
 13
 We believe, however, that since the stipulation clearly establishes that on the date of the merger-liquidation the taxpayer was obligated to the minority shareholders for 160,085 shares of the taxpayer's preferred stock,[3] and that, as even the Tax Court concedes, MSG thus acquired 100% Of the Old Garden assets, the stepped-up basis should apply to that 100% Rather than to the lesser percentage owned prior to the actual distribution.
 
 
 14
 In reaching its contrary conclusion, the Tax Court looked solely to 334(b)(2) and its attendant regulations. The statute states:
 
 
 15
 The basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made.
 
 
 16
 26 U.S.C. 334(b)(2)(B).
 
 And the regulations add:
 
 17
 Property received with reference to stock owned immediately before the liquidation by the parent corporation is the only property to which section 334(b)(2) is applicable. The section is not applicable to property received with respect to debt or other claims. The basis of the stock used in determining the basis of the assets is the total basis of all stock held by the parent corporation.
 
 
 18
 1.334-1(c)(1).
 
 
 19
 While neither of these sections directly applies where the acquiring corporation has not only purchased the requisite 80% Control but has also bought out the minority shareholders in order to acquire a 100% Interest in the distributed assets, the Service, in 1959, adopted a revenue ruling which controls just this case:
 
 
 20
 Advice has been requested whether payments made by a parent corporation to minority shareholders of a subsidiary corporation, after a cancellation of stock and a distribution of assets of the subsidiary corporation, can be considered in payment for stock of the subsidiary corporation in computing the over-all basis of the assets received by the parent corporation within the meaning of section 334(b)(2) of the Internal Revenue Code of 1954.
 
 
 21
 M corporation contracted to purchase, at fair market value (45x dollars per share), 99 percent of the shares of N corporation. Immediately after such purchase, N was merged into the parent corporation M in a liquidation to which section 332 of the Code applied. Under the merger agreement, all of the shares of N were cancelled and all of its assets were distributed to M corporation, subject to the interests of the minority shareholders. As to the minority interest of one percent, the agreement provided that, if all of the stock of N corporation was not acquired prior to the liquidation and merger, the parent corporation would be obligated to pay upon the surrender of the certificates, 45x dollars per share for all shares not previously acquired. The minority interests were purchased subsequent to the liquidation and merger.
 
 
 22
 Section 334(b)(2) of the Code, in pertinent part, unequivocally provides that 'the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made.' Section 1.334-1(c)(1) of the Income Tax Regulations can only be deemed to be explanatory of and in conformity with this definite statutory command. In substance, section 1.334-1(c)(1) of the regulations provides that property received with respect to stock owned immediately before the liquidation is the only property to which section 334(b)(2) of the Code applies. It does not apply to property received with respect to debts or other claims. In view of the statute, this section must be interpreted to mean that the basis provisions of section 334(b)(2) of the Code apply to all stock held with respect to which distribution is made in liquidation. That is to say, all stock purchases, irrespective of when made, are includible in determining basis so long as such stock is held at the time of distribution. however, if property is received for some other reason, such as in payment of a liability assumed, with respect thereto, the basis of such property is not determined under section 334(b)(2) of the Code, but rather under other applicable basis provisions of the law.
 
 
 23
 Under the facts presented, in effect, what M corporation did was to assume an obligation of the liquidated corporation to its minority shareholders. Accordingly, the subsequent payments should be treated as the release of a liability of N corporation assumed by M corporation. Thus, the taxpayer is entitled to have a basis attach to the assets to the extent the liability was assumed and paid.
 
 
 24
 Rev.Rul. 59-412, 1959-2 Cum.Bull. 108.
 
 
 25
 Here the Service has ignored this ruling both below and on appeal. Yet in at least two other cases decided after this one, the Service has taken the position that the ruling applies to the type of transaction at issue here-- and the Tax Court has agreed.
 
 
 26
 In May B. Kass v. Commissioner of Internal Revenue, 60 T.C. 218, 225 (1973), aff'd without opinion, 491 F.2d 749 (3d Cir. 1974) the Tax Court noted this inconsistency on the part of the Commissioner:
 
 
 27
 In the present case, with essentially the same facts (as in Madison Square Garden) but the minority shareholder as petitioner, respondent (the Commissioner) argues that the statutory merger is a nonqualifying reorganization, thus a sale, thus taxable at the shareholder level. Although technically he need not mention the corporate basis aspects nor sections 334(b) (2) and 332, respondent frankly admits that at the corporate level he would allow the assets received with reference to the stock belonging to the minority shareholders a stepped-up basis. This admission by the respondent unavoidably conflicts with the result argued for and achieved in Madison Square Garden.
 
 
 28
 In accepting the Commissioner's change of heart in Kass, the Tax Court sought to avoid a similar charge of inconsistency by distinguishing its opinion in Madison Square Garden on procedural grounds:
 
 
 29
 The result reached in Madison Square Garden Corp. is, at first blush, inconsistent with the result reached in this case. The apparent inconsistency is due to the manner in which Madison Square Garden was argued and the way its issues were framed by the parties.
 
 
 30
 . . . The taxpayer, the acquiring parent corporation, claimed that it was entitled to a step up in the basis of the assets received with reference to the stock that it had purchased and a step up in the basis of the assets received in the statutory merger, though the stock to which those assets were 'attached' belonged to minority shareholders. The latter portion of the claim conflicted with the position taken on its return. It is important to note that in Madison Square Garden, as in the instant case, there was a section 334(b)(2) 'purchase' followed by a statutory merger and that the two steps were obviously part of an integrated plan. On this secondary issue, the Commissioner argued that section 334(b)(2) gives a stepped-up or cost-of-stock basis only to 'property received with reference to stock owned immediately before the liquidation (or statutory merger treated as a liquidation for section 332 purposes).' Since Madison Square Garden owned only 80.22 percent of the stock immediately before the merger, it should be limited in a step up in basis to only 80.22 percent of the assets received. Thus the Commissioner took a very narrow view of the applicable law basing his arguments on section 334(b)(2) and the regulations thereunder. Likewise, Madison Square Garden argued solely in terms of section 334(b)(2). Neither party mentioned the possibility that the minority shareholders, who were not parties to the proceeding, might recognize gain (because the two-step transaction was integrated and thus there was no continuity-of-interest) and therefore the corporation should get a step up in basis to reflect the tax at the shareholder level, on the theory that a nonqualifying reorganization is simply a purchase or sale. Confronted with these arguments and the narrowly framed issue, this Court held that Madison Square Garden, the acquiring parent, was not entitled to a step up in basis under section 334(b)(2) as to part of the property.
 
 
 31
 60 T.C. 218, 223-224 (1973).
 
 
 32
 Where Kass the only authority inconsistent with the Tax Court's conclusion below, we might be willing to accept this distinction. But we believe the result in Kass is itself compelled by Rev.Rul. 59-412 as discussed above, the more general rule that basis should equal the cost to the taxpayer, and the principle that substance should prevail over mere form. See also Mertens, Code Commentary 334(b)(2):7 for a general discussion of upward basis adjustments where there has been an assumption of liability by the acquiring corporation. In short, we believe the Tax Court should have applied these broader principles even if the taxpayer did not raise the question as effectively as it might have.
 
 
 33
 Moreover since Kass the Tax Court has again held that the situation here calls for a stepped-up basis on all the acquired assets. In Yoc Heating v. Commissioner of Internal Revenue, 61 T.C. 168, 179 (1973), the court formulated the applicable rule as follows:
 
 
 34
 Clearly, the total basis should include the amounts paid by (the taxpayer) . . . both for the shares . . . which were the subject of the initial acquisition, and for additional shares . . . acquired . . . prior to the . . . acquisition . . . of the assets and liabilities of (the former corporation).
 
 
 35
 . . . With respect to the shares of common stock . . . acquired . . . after the transfer of (the) assets, the situation is less clear. Under the agreement of sale, (taxpayer) was required to pay minority shareholders either $40 a share or stock; in point of fact, it paid cash in all such cases . . .. To the extent that such payments were made in satisfaction of the rights of the minority shareholders to the fair value of their interest in the assets . . . the amounts paid will be a proper addition to the total basis of the assets . . ..
 
 
 36
 Here it is clear that MSG was so obligated to the minority shareholders and that this obligation was immediately met by the transfer of the MSG preferred. Again Yoc Heating recognizes that it is inconsistent with the decision below in this case and attempts to avoid the problem by making the same procedural distinction offered in Kass.[4] But as indicated above, we think the state of the pleadings and the stipulated evidence here do not justify reaching a result so plainly inconsistent with not only Kass and Yoc Heating-- with which we agree-- but also with the Service's own ruling and the fundamental principle that in such integrated transactions substance, and not mere form, should control.
 
 
 37
 We therefore affirm on the Commissioner's appeal, but reverse and remand on the taxpayer's appeal for application of the stepped-up basis to 100% Of the assets received.
 
 
 
 *
 United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Exception.-- If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), and if--
 (B) stock of the distributing corporation possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote, and at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), was acquired by the distributee by purchase (as defined in paragraph (3)) during a 12-month period beginning with the . . .
 (i) the date of the first acquisition by purchase of such stock . . .
 then the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made.
 
 
 [2]
 We trust that the stipulation to the effect that the useful life of a Knicks or Rangers player is seven years reflects but an accounting judgment
 
 
 [3]
 Madison Square Garden Corporation ('Garden') was a corporation organized under the laws of the State of New York and was merged into its parent Graham-Paige Corporation on April 20, 1960
 Pursuant to the agreement of merger between Petitioner and Garden, the holders of 71,149 shares of Garden's capital stock which were not owned by Petitioner were entitled to receive in exchange therefor 160,085 shares of Petitioner's $.60 cumulative preferred stock. As of April 20, 1960, the fair market value of such shares were as follows: Garden's capital stock-- $19.375 per share and Petitioner's $.60 cumulative preferred stock was $8.75.
 Stipulation of Facts PP2, 16.
 
 
 [4]
 We do not read Madison Square Garden Corp., 58 T.C. 619, 627 (1972), on appeal (C.A.2, Aug. 1973), as requiring a different conclusion. That case turned on the state of the pleadings and the evidence. See May B. Kass v. Commissioner of Internal Revenue, 60 T.C. 218, 223-225 (1973). 61 T.C. 168, 179 n. 17 (1973)